CAROTHERS & SEARIGHT V. R. F. ALEXANDER.

No. 5755.

1.   **Contract Construed — Clearing Title to Land — Recitals.**—May 30, 1867, Beales of the one part and Johns and Kerbey of the other entered into a written contract substantially as follows:   "Whereas, the government of Mexico did  on the eighteenth day of April, 1834, grant to the said Dolores Soto de Beales eleven leagues of land on the Las Moras, a tributary of the Rio Grande, in the State of Texas; and whereas, the said C. R. Johns & Co. have agreed to undertake the settlement of the title to said lands and the adjustment of the claims of the parties of the first part (Beales and wife) thereto for a compensation of one-half of the interest therein of the parties of the first part, in lieu of all other compensation, and of all personal liability of the parties of the first part to the said parties of the second part, or any one employed by them:   Now, therefore, the said parties of the first part, in consideration of the premises, do hereby agree to convey to the parties of the second part one equal half part of any tract or parcel of land of which they may by virtue of the rights and interests aforesaid secure a good and perfect title, and to release to them one-half of the proceeds in money or other property which they may realize for or in lieu of the rights and interests aforesaid; such conveyances or releases to be made from time to time as soon as any definite

arrangements shall appear from the reports and accounts of the parties of the second part to have been accomplished; such reports and accounts of their action in the premises to be given to the parties of the first part as often as once in three months from the date hereof."´ An assignee of Johns and Kerbey brought suit claiming title under said contract upon a full compliance therewith by Johns and Kerbey. The defendants held under the heirs of Beales and wife. *Held:*

1. If plaintiff had any title at all the Beales are the common source of title of both parties, and it was not necessary for plaintiff to trace title beyond Beales and wife.

2. But to prove title from the common source it devolved upon plaintiff to show such compliance with the contract by Johns and Kerbey as would entitle them to the stipulated interest in the lands.

3. It was not intended by the contract that Johns and Kerbey undertook to procure a. grant from the State, nor to perfect an inchoate or imperfect grant.

4. Johns and Kerbey and their assignees are entitled to the benefit of the recitals. in the contract that the government of Mexico had made the grant April 18, 1834.

5. The obligation upon Johns and Kerbey was to quiet the title already granted by the removal of conflicting claims and by the acquisition of possession under the Beales. title.

6. When obstacles to the recognition of the Beales title were once removed the obligation of Johns and Kerbey would be performed, and they would thereby become: equitable owners of one-half of the lands so quieted and their obligation be fully discharged.

7. Briefly, the contract is that Mrs. Beales had a perfect title to the land, and an undertaking upon part of Johns and Kerbey that they would clear the land of then existing adverse claims, and get possession of it under the Beales title, and a promise on the part of Beales and wife that they (J. and K.) should have title to one-half of the land.

2. **Parol Contract for Transfer of Land—Estoppel—Partnership Lands.—** Under the contract above set out Johns and Kerbey in 1867 reduced to possession the Beales grant and by tenants kept continuous possession. In 1869, by a reorganization of the firm, Von Rosenberg and Everett were admitted as members. By consent the half interest in the Beales grant claimed by Johns and Kerbey was to be held, Johns one-third, Kerbey one-third, Von Rosenberg one-sixth, and Everett one-sixth. In 1872 Kerbey withdrew from the firm taking with him his interest (supposed to be one-sixth of the grant). In 1875 the firm of C. R. Johns & Co. was dissolved by forming a corporation consisting of Johns, Von Rosenberg, and Everett, each conveying an equal amount of property to the corporation, viz., one-twelfth each, thus leaving the agreed ownership of the half of the Beales grant earned under the first stated contract as follows: Kerbey two-twelfths, C. R. Johns one-twelfth, and the corporation three-twelfths of the grant. No written conveyance was made by Johns and Kerbey or either to the partnership in 1869 nor in 1872 to the corporation. December 18, 1876, the corporation being insolvent, made a deed of assignment to A. J. Peeler of "all and singular the lands, tenements, hereditaments, real estate, and interest therein, and chattels real of the said corporation" * * * (referring to an annexed schedule and to the deeds therefor to be handed to the assignee). * * * Also "all other lands and real estate and interest therein belonging to party of first part, if any such there be, not included in said schedule," etc. The lands in controversy are referred to in the schedule: "Our interest in the Beales grant, 80,000 acres at 30 cents, $24,000." The body of the assignment. is signed as follows:

"Attested:                                    "C. R. JOHNS, Pres.,.

    [L. S.]                              ."C. R. JOHNS & CO.,.

"W. VON ROSENBERG.                        "A. J. PEELER."

March 17, 1879, Peeler as assignee conveyed all right and interest in the Beales grant owned by the corporation to Kerbey and Alexander. November 2, 1883, Kerbey deeded to plaintiff Alexander "all his title, interest, and claim, estimated at 13,184 acres, part.

of the Beales grant, * * * being one-sixth thereof, by virtue of original contract, * * * and an undivided interest of C. R. Johns & Co. conveyed by Peeler, assignee, to Kerbey and Alexander." *Held:*

1. Upon reduction to possession and removing adverse claims to the Beales title the equitable ownership in one-half vested in Johns and Kerbey.

2. It was error to admit parol evidence of the agreement in parol by and between Johns, Kerbey, Von Rosenberg, and Everett, as evidence of a transfer of any part of the estate in the grant owned by Johns and Kerbey to the partnership of C. R. Johns & Co., or to the corporation of same name subsequently created.

3. The charge of the court that title could pass without a conveyance in writing under the testimony was erroneous, as was refusal to charge that a written conveyance was necessary, etc.

4. A number of persons owning lands do not by the mere act of associating themselves together as partners invest the firm with a title to their real estate. Nor can a firm by the mere act of incorporating themselves by the same name invest the corporation with the title to the real estate owned by the firm.

5. In order that the equities of partners, whatever they may be, may be applied to their real estate it is not necessary to hold that in their transactions with reference to it the statute of frauds is abrogated, or that links in the chain of title coming through the partnership need not be in writing.

6. The court should have construed the contract and under the undisputed testimony should have informed the jury that the assignees of Johns and Kerbey owned one-half the Beales grant.

7. Kerbey's deed to plaintiff by estoppel operated to convey three-twelfths of the grant, being his two-twelfths retained in dissolving with C. R. Johns & Co. and also one-twelfth which he had not conveyed to the firm.

8. The deed by the corporation, signed by Johns as president, conveying the right of the corporation to an undefined interest and at the same time recognizing an undefined interest in the same land in Johns that it does not convey, is not an estoppel concluding the individual interest of Johns.

9. If the deed signed by Johns as president of the corporation had been an absolute conveyance of the entire interest in the land in the corporation when he himself owned the property, the deed would have passed his interest by estoppel.

10. The plaintiff only having shown title to Kerbey's share, three-twelfths, and the verdict being for five-twelfths, a new trial should have been granted.

APPEAL from Bexar. Tried below before Hon. G. H. Noonan.

December 31, 1883, R. F. Alexander, asserting title to an undivided five-twelfths of an eleven-league grant in Kinney County, in the name of Doña Dolores Soto de Beales, less certain tracts described and specially excepted, sued W. S. Carothers and G. A. Searight, under their firm name of Carothers & Searight, in the District Court of Kinney County, in an action of trespass to try title, and sought thereby a judgment for the recovery of said five-twelfths and a decree of partition as between him and the defendants, who are alleged to be the owners of the remaining seven-twelfths of the premises in controversy.

The case by agreement of the parties plaintiff and defendants was transferred for trial to the District Court of Bexar County.

To plaintiff's petition the defendants interposed the pleas of "not guilty," limitation of ten years, and stale demand. Trial before court and

jury resulting, September 29, 1885, in a verdict and judgment for plaintiff. Defendants appeal.

The opinion states the case.

*Maxey & Fisher, Hancock & Shelley,* and *Coopwood & Coopwood,* for appellants. — 1. It having been affirmatively shown that part of the alleged interest of C. R. Johns and J. C. Kerbey was attempted to be passed by them to the firm of C. R. Johns & Co. through proof of parol agreements and not by deeds, and that the interest of the firm was in the like manner sought to be transferred to the corporation, it results that as to this interest no title passed to Alexander under the deeds through which he claims. Rev. Stats., arts. 548, 2464; Norris v. Hunt, 51 Texas, 614; Castro v. Illies, 13 Texas, 230; Ryan v. Wilson, 56 Texas, 38; Farmer v. Simpson, 6 Texas, 307; Garner v. Stubblefield, 5 Texas, 552; Ann Berta Lodge v. Leverton, 42 Texas, 18; 2 Reed on Stat. Frauds, sec. 732; Plath v. Kitzmuller, 52 Cal., 492.

2. Plaintiff's right of recovery depending upon proof of facts which would be sufficient to support a bill for specific performance, and the petition containing no averments alleging the existence of this contract and the performance thereof, the court should have sustained the objections urged to its admission in evidence, and having admitted it should, as requested by defendants, have withdrawn it from the jury. Lewis & Baker v. Stuart, 62 Texas, 355; Cooper v. Carlisle, 17 N. J., ——; Rippetoe v. Dwyer, 49 Texas, 505; Carter v. Attaway, 46 Texas, 111; Moreland v. Barnhart, 44 Texas, 283; Edrington v. Newland, 57 Texas, 627; Smith v. Sublett, 28 Texas, 169, 171; Walters v. Jewett, 28 Texas, 192; Folger v. Coward, 35 Cal., 653; Blum v. Robertson, 24 Cal., 135; 19 Cal., 273.

3. When title depends upon proof of the performance of an executory contract no recovery of the land can be had against the vendor therein or those claiming by deed from him, either in trespass to try title or by bill for specific performance, unless the facts necessary to support a bill for specific performance be alleged, and this rule can not be evaded by electing to sue in trespass to try title in ordinary form. Dunlap v. Wright, 11 Texas, 605; Estis v. Browning, 11 Texas, 245, 247; Ayers v. Dupree, 27 Texas, 604, 605; Masterson v. Cohen, 46 Texas, 522, 525; Thurber v. Conners, 57 Texas, 97; Daniel v. Hill, 23 Texas, 572, Whiteman v. Castlebury, 8 Texas, 442.

4. The instructions given by the court upon the questions of estoppel, recognition, acquiescence, and waiver were incorrect statements of the law, and as applied to the facts of this case inapplicable, partial, and incomplete. Scoby v. Sweatt, 28 Texas, 730, 731; Burleson v. Burleson, 28 Texas, 415, 417; Henshaw v. Bissell, 18 Wall., 271.

*Clark & Dyer* and *Goodrich & Clarkson,* for appellee.—1. By virtue

of the contract made by Beales and wife in 1867 with Johns & Co., the performance of the same by Johns & Co., and the acceptance of such performance by Beales and wife, there became invested in Johns & Co. an absolute indefeasible right to an undivided one-half interest in the Dolores grant, good against Beales and wife and their heirs and against the appellants who took the bare legal estate from them without any compensation paid or promised and with full notice from them that said interest was undisputed by them.

2.  The arrangements and agreements between the individual members of the firm of C. R. Johns & Co. as to their respective rights in the land earned under the Beales contract was legal, and sufficient to vest ownership in said land as partnership assets according to the terms of said agreement; and a similar agreement by said members upon the incorporation of the firm, consummated by an actual sale for valuable consideration received by each member, and a recognition of the right of the corporation to three-twelfths of the grant by the parties in interest, was sufficient to vest and did vest in the corporation full ownership in said interest of three-twelfths, which passed to Peeler by assignment for the benefit of its creditors.  Story on Part., pp. 141, 142, notes: Tarbel v. Bradley, 7 Abb., 273; Andrews v. Bunn, 56 Am. Dec., 252; Causler v. Wharton, 62 Ala., 358; Rowland v. Boozer, 10 Ala., 690; Wiegand v. Copeland, 7 Sawy., 442.


HENRY, ASSOCIATE JUSTICE.—This was an action of trespass to try title and for partition, brought by appellee to recover an undivided five-twelfths of an eleven league grant in Kinney County, in the name of Doña Dolores Soto de Beales, less certain tracts described and specially excepted.

The defendants are alleged to be the owners of the remaining seven-twelfths.

The defendants pleaded "not guilty," stale demand, and the statute of limitations of ten years.

Judgment for plaintiff was rendered on the verdict of a jury.

On the 30th day of May, 1867, John Charles Beales and his wife Dolores Soto de Beales, of the one part, and C. R. Johns and J. C. Kerbey, composing the firm of C. R. Johns & Co., of the other part, entered into a written contract substantially as follows:

" Whereas, the government of Mexico did on the 18th day of April, 1834, grant to the said Dolores Soto de Beales eleven leagues of land on the Las Moras, a tributary of the Rio Grande, in the State of Texas; and whereas, the said C. R. Johns & Co. have agreed to undertake the settlement of the title to said lands and the adjustment of the claims of the parties of the first part thereto, for a compensation of one-half of the interest therein of the parties of the first part in lieu of all other compensation, and of

all personal liability of the parties of the first part to the said parties of the second part, or any one employed by them: Now therefore the said parties of the first part in consideration of the premises do hereby agree to convey to the parties of the second part one equal half part of any tract, piece, or parcel of land of which they may by virtue of the rights and interests aforesaid secure a good and perfect title, and to release to them one-half of the proceeds in money or other property which they may realize for or in lieu of the rights and interests aforesaid, such conveyances or releases to be made from time to time as soon as any definite arrangements shall appear from the reports and accounts of the parties of the second part to have been accomplished, such reports and accounts of their action in the premises to be given to the parties of the first part as often as once in three months from the date hereof."

Plaintiff's claim of title comes through C. R. Johns and J. C. Kerbey under the above agreement. Defendants' claim of title depends upon purchases from the heirs or devisees of John Charles Beales and his wife Dolores Soto de Beales. It follows that if plaintiff has any title at all the last named persons are common source of title of both parties, and it becomes unnecessary to trace the title to the government or beyond J. C. Beales and wife.

In order to prove title from the common source it was incumbent on plaintiff to prove such performance of the terms of the contract of May 30, 1867, as would entitle J. C. Kerbey and C. R. Johns to the interest in the land thereby provided for.

To whatever extent plaintiff was required to prove title in Mrs. Beales in order to show that Johns and Kerbey had complied with their undertaking the rule of common source had no application. The two things should not be confounded.

If plaintiff can not prove that Johns and Kerbey performed their part of the contract except by proving the Beales title from the government down, he must do that. On the other hand when he has proved such performance of the contract the rule of common source relieves him from further proof on that line.

The construction of the contract is a question of law. Its true meaning is to be arrived at by giving effect to all of its provisions read in the light of the circumstances surrounding the parties and the subject matter at the time of its execution. Looking to the contract itself it is evident that it was not intended that Johns and Kerbey undertook to procure a grant from the government, nor to perfect an inchoate or imperfect grant, for the agreement expressly recites that "the government of Mexico did on the 18th day of April, 1834, grant to the said Dolores Soto de Beales eleven leagues of land on the Las Moras, a tributary of the Rio Grande, in the State of Texas." Kerbey and Johns and their assignees are as much entitled to the benefit of this express stipulation in the contract and the

other parties and their successors are as much bound by it as they are by any other clause in the agreement.

The fact that the lands were titled being fixed by the agreement, Johns and Kerbey "agreed to undertake the *settlement* of the title to said lands and the adjustment of the claims of the parties of the first part thereto."

That the undertaking of Johns and Kerbey in agreeing to settle the title was not to procure one, but to quiet one already in force, is made manifest by what follows in the writing, whereby the parties of the first part bind themselves to convey to the parties of the second part "one equal half of any tract, piece, or parcel of land of which they may by virtue of the rights and interests aforesaid (meaning the title aforesaid) secure a good and perfect title." If it had been the government title that the parties of the second part were to establish it would properly have been referred to as a whole, not by parcels; but the title being conceded, as it was, and the object being to settle or quiet it upon the land by removing conflicting claims, the language was properly applied to tracts or parcels of the land as one after another they became clear by the adjustment or removal of conflicting claims and by the acquisition of possession under the Beales title.

The method of settlement with Johns and Kerbey being by a release to them of "one-half of the proceeds in money or property which they may realize, to be made from time to time as soon as any definite arrangements shall appear," and the provisions with regard to taxes and expenses, "after any parcel or tract of property shall have been secured and the title perfected by virtue hereof," still further illustrate that it was not the government title to Beales that was to be established, but the removal of other claims that stood in the way of the enjoyment of that title.

It is evident that the parties to the contract intended that when such obstructions to the enjoyment of the Beales title were once removed the obligations of Johns and Kerbey would be performed, and they would thereby become equitable owners of one-half of the lands so quieted, and their obligations under the agreement be forever discharged.

It can not be contended that after the lands were once reduced to possession and cleared of conflicting claims Johns and Kerbey would be bound to protect them from future attacks of the same character, or that their title to their interest being once earned could afterwards be divested by the unlawful acts of other persons with which they had no connection.

Briefly we construe the contract to be an agreement of all parties that Mrs. Beales had a perfect title to the land, and an undertaking upon the part of Johns and Kerbey that they would clear the land of then existing adverse claims and get possession of it under the Beales title, and a promise upon the part of the Beales that for doing that they should have title to one-half of the lands. This we conclude is the language that the contract itself speaks.

There seems to have been no conflicting testimony as to the circumstances surrounding the subject matter and the parties when the contract was made, nor as to what was done in executing it.

The conditions in these respects, as shown by the evidence of C. R. Johns, were as follows:

That he and J. C. Kerbey were the original parties to the contract of May 30, 1867. That under the contract he and Kerbey undertook the settlement and adjustment of the Dolores title for a compensation of one-half of the land or proceeds thereof. That when the contract was executed he and Kerbey constituted the firm of C. R. Johns & Co., engaged in a land agency business at Austin, Texas. That at the time last aforesaid the Dolores title was not recognized by the State authorities as a valid title; it had never been platted or delineated upon the maps in use in the General Land Office, and the testimonio of the title on deposit in the Land Office lacked evidence of authority to act in Fortunato Soto, the commissioner by whom the title purported to have been extended. That in 1867, within a month or two after the execution of the contract, C. R. Johns & Co. (as the firm was then constituted), through J. C. Kerbey, took formal possession of the grant for the Beales and executed a lease thereof to one O. A. Strickland. That during the same year Johns & Co. caused said grant to be surveyed by the duly authorized surveyor of the land district to which Kinney County, in which the land lay, belonged, and returned the field notes to the General Land Office. That after the return of the field notes the grant was platted on the map of Kinney County and has since been there represented. That it being deemed necessary by the Land Office to secure proper evidence of the authority of Soto, special commissioner, to extend the title to Doña Dolores Soto de Beales, Johns & Co. made efforts to supply this defect in title. That they succeeded in finding Soto in Mexico and finally succeeded in getting possession through Dr. Beales of the original letter of authority or commission under which Soto acted, and filed and deposited the same in the General Land Office, where it has since remained. That after the platting of the grant on the map the then Commissioner (Keuchler) recognized and respected said grant and gave to Johns & Co. certificates to that effect, which were forwarded to Dr. Beales. That reports of what was being done were from time to time made by C. R. Johns & Co. to Dr. Beales, the principal correspondence being conducted in behalf of the firm by the witness (C. R. Johns). That after the recognition by the Land Office of the validity of the Dolores title Johns & Co. regarded and treated the contract as performed on their part, and Dr. Beales prior to his death, and after his death his children, and Miss Exter, Mrs. Beales's daughter by a former marriage, likewise recognized C. R. Johns & Co. as being entitled under the contract to one-half the grant. That the right of C. R. Johns was never questioned by Dr. Beales during his life, but was

always recognized. That neither in his letters nor in several personal interviews which occurred between him and the witness (between 1870 and 1878) did Dr. Beales claim that anything remained to be done to complete Johns & Co.'s right under the contract. That all the correspondence—original letters from Dr. Beales, and from Miss Exter and J. A. G. Beales (after the doctor's death), and the letter-press copies of the letters from Johns & Co. to the doctor and to other members of the Beales family—were destroyed by fire at Austin in the burning of the Hancock building, in which witness had his office. That in addition to getting the grant upon the map, procuring the commission of Soto, and securing the recognition of the title by the Commissioner, C. R. Johns & Co. took, kept, and held continuous possession of the grant by tenants from about 1867 until some time in 1883, when the defendants bought the Beales interest. That tenants were procured and kept upon the grant by Johns & Co. and at their labor and expense, leases being executed in writing and from time to time renewed. That some of these leases were spread upon the records of Kinney County, but some might not have been recorded. That after the completion of the contract by Johns & Co. in the manner stated Dr. Beales furnished his proportion of money to pay taxes on his one-half, and after his death in 1878, and that of Mrs. Beales, which occurred in 1872, the heirs and devisees of Beales and wife also furnished money to pay taxes on their one-half. That prior to the settlement of the title Johns & Co., as they had agreed, paid all the taxes, costs, and expenses incurred in and about the accomplishment of the end in the contemplation of the parties. That Dr. Beales prior to his death had printed and distributed a pamphlet touching the condition of the Dolores and other grants to which he asserted title, in which he asserted that the Dolores title was a good title, and supported the assertion with the certificates referred to above as furnished by the Commissioner of the Land Office at the instance of C. R. Johns & Co.

The witness further testified that when the contract was made there were no adverse claimants except S. A. Maverick, who held patents from the State for a part of the land lying within the grant; that his patents had been issued prior to the delineation of the grant on the maps or its recognition by the Land Office; that after the recognition and the lodging of Soto's commission in the Land Office Maverick yielded to the Dolores title, returned for cancellation and had canceled his patents, and bought from C. R. Johns & Co., under the Dolores title, the land covered by the patents; that Johns & Co. in making this sale acted for the Beales and for themselves as co-owners, and that the money realized from the sale was divided as agreed in the contract; that no deed or other conveyance except the contract was ever executed by the Beales; that Johns & Co. several times urged a partition of interests so that they might sell and dis-

pose of their interest separately, but Dr. Beales was disinclined to sever interests, expressing a desire to continue to receive the benefits resulting from what Johns & Co. might do in protecting the grant and effecting sales; that the correspondence for the period immediately following the making of the contract was chiefly with reference to the defect in the title and securing a recognition of the title by the State authorities, but the correspondence for sometime preceding the death of Dr. Beales never questioned the right of C. R. Johns & Co., and was directed mainly to an exchange of views with respect to disposing of the land and realizing money therefor; that after the doctor's death a proposition was made by the heirs and devisees of Beales to partition the respective interests of the owners, but for some reason, perhaps the absence of Kerbey and Alexander, it was not effected; that at the time of this proposition (1882) J. A. G. Beales, Miss Exter, Mrs. A. K. Jaffray, Kerbey and Alexander, and Tom D. Johns were recognized as the owners of the grant, each holding the following interests: James A. G. Beales, one-twelfth; Miss Exter, four-twelfths; Mrs. Jaffray, one-twelfth; Tom Johns, one-twelfth; and Kerbey and Alexander, five-twelfths.

The witness further testified that he had made in the capacity of agent for the owners of the grant two contracts with counsel at Austin looking to the conduct of certain litigation then pending and litigation likely to ensue from adverse locations over and claims against the validity of the Dolores title; the first dated January 1, 1879, with Hancock & West and Terrell & Walker, and the other with Hancock & West and Maxey & Fisher, dated August 7, 1882. That under the first contract the attorneys named removed into the United States Court at Austin a case which had been brought in the District Court of Kinney County by the Clark Irrigation Company upon a claim to land within the Dolores grant, based upon patents issued by the State. This suit after removal was not prosecuted by the plaintiff, and the defendants setting up the Dolores title proceeded with the case, which resulted in a judgment reciting and affirming the validity of the Dolores title. The other contract never became operative, Kerbey refusing to ratify. About 1882 a large number of locations and surveys were made on the grant, and the purpose of employing counsel was to remove cloud and quiet the title. That about six months after the attempted employment of Hancock & West and Maxey & Fisher the defendants bought out the interest of the Beales heirs in the Dolores grant, and that before the purchase by them they had been fully advised by him of the claims of owners of the grant and how they claimed. That he informed them in conversations that Kerbey and Alexander had an interest and the extent of it. .

W. Von Rosenberg testified substantially as did Johns as to acts of recognition of interest in C. R. Johns & Co. by the Beales. He further testified that no survey of the Dolores grant was ever made so far as he

knew, but that Johns & Co. furnished the Land Office the field notes of a connecting line which with the field notes in the grant enabled the same to be delineated on the map. This was done August 26, 1867, while he was chief draftsman, and the platting was done by him. That through correspondents of C. R. Johns & Co. in Mexico the whereabouts of Soto was ascertained, and also the fact that he still had the original commission upon which he acted in his possession. Soto was not willing to part with its possession except for a large consideration. That Johns & Co. appealed to Dr. Beales, who was a family connection of Soto, to use his influence. That before the commission was procured Soto died, and Johns & Co. afterwards through Dr. Beales procured and filed same in Land Office. Dr. Beales received it from the heirs of Soto. Upon the filing of this commission the estate of S. A. Maverick, which owned certain patented lands within the grant, surrendered the patents for cancellation and bought the Dolores title. That the grant was recognized as valid by the Land Office in 1874.

The depositions of Jacob Kuechler, a former Commissioner of the Land Office, showed in substance that when he went into office he found the grant on the maps, and that it was officially recognized during his term of office, extending from 1869 to 1874, as a valid grant. That there were no locations over said grant while he was Commissioner, and no patents on locations made on said grant were issued during that period. That he obtained his knowledge of the Dolores grant from the maps in use in the Land Office on which the grant was delineated, and from the Spanish archives of the office. That the testimonio of the grant was on file in the Spanish archives of the office when he was Commissioner, and no change was made in the status of the record during his term. That there was no archive evidence of the Dolores grant in the Land Office.

Appellants assign forty-seven errors. Assignments numbers 15 to 45 inclusive relate to charges given and refused by the court. So much of said charges as we consider it necessary to comment upon read as follows:

"3. The pleadings of both plaintiff and defendants are general, but as developed by the evidence the plaintiff deraigns his title or right by virtue of which he seeks to recover as follows, viz.:

"He shows two deeds executed by Anità Exter and by James A. G. Beales and Mrs. A. K. Jaffray and her husband respectively to the defendant, one dated on the twelfth day of February, 1883, and the other on the third day of March, 1883. Said deeds are duly recorded in Kinney County. It being admitted that the makers of said deeds were and are the heirs of Dr. Jno. Chas. Beales and his wife Dolores Soto, you are instructed that said deeds are sufficient to convey to the defendants such right as the said heirs then had, and no more. The plaintiff offered said two deeds for the purpose of proving a common source of title, and then

produced as a foundation of his right a contract made by said Dr. Beales. and wife of one part, and by C. R. Johns and J. C. Kerbey, composing the firm of C. R. Johns & Co., of the other part, dated May 30, 1867. Construing this contract, you are instructed that said contract asserts right in Beales and wife to a grant claimed to be made to Mrs. Beales by the Mexican Government in 1834, and also contemplates some defect or want of proof to establish the right claimed by the Beales. The particulars of such defects, and the acts necessary to be done to establish and adjust the title of Mrs. Beales to said tract of land, are not stated, but the obligation of said Johns & Co. is expressed in general terms, and in law bound Johns & Co. to maintain the right claimed by the Beales and to secure to them the possession of the land. The contract bound Beales and wife, in consideration of the services to be rendered by Johns & Co., to convey to Johns & Co. one-half of all the lands or proceeds thereof recovered by virtue of the Beales claim, and provides that the right of Johns & Co. should vest as soon as said land or any part thereof should be recovered.

"4.   You will perceive that the first question to be determined is, did C. R. Johns and J. C. Kerbey, comprising the firm of Johns & Co., or either of them acting for the firm, do the things required of them by said contract? If in view of all the facts and circumstances in evidence in this case you find that Johns & Co. did and caused to be done all that was requisite in the premises, and all that was contemplated by the parties when said contract was made, then a right vested in Johns & Co. as soon as said acts were done, which right being complete could be held or transferred by Johns & Co. as other property could be held or transferred by said firm.

"5.   The plaintiff in this suit claims all the land thus vested in the firm of Johns & Co. except an undivided one-twelfth part thereof, which he concedes is vested in the defendants by the deed of Tom Johns. You will consider in making up your verdict a deed of assignment made by the corporation of C. R. Johns & Co. to A. J. Peeler, which deed is dated December 8, 1876; also a deed from said A. J. Peeler as such assignee to Alexander and J. C. Kerbey, dated the 17th day of March, 1879. Said deeds are sufficient to and do vest in the plaintiff Alexander and said Kerbey all the interest held by said corporation of C. R. Johns & Co. in the Dolores grant under the Beales contract at the time said deed of assignment was made. You will also consider in evidence a deed from J. C. Kerbey to plaintiff, dated on the 22d day of November, 1883, which deed is sufficient to and does convey to plaintiff Alexander all the interest held by the said J. C. Kerbey.

"6.   The defendants in support of the right claimed by them have read in evidence two deeds made to them by Anita Exter and by James A. G.

Beales and Mrs. Jaffray and her husband; said deeds are dated respectively February 12, 1883, and March 3, 1883.

"They have also shown that Dr. J. C. Beales and wife are dead, and that the above named Anita Exter, J. A. G. Beales, and Mrs. Jaffray are their only heirs, and by virtue of said heirship they are the owners of all the right, title, and interest held by Beales and wife in the Dolores grant, subject to such right as Johns and Kerbey, comprising the firm of Johns & Co., or their assignees had under the contract of May, 1867.   Defendants also read in evidence a deed from Thomas D. Johns to them, dated May 5, 1883, which deed conveys to said defendants 3776 acres of land, being a portion or one-twelfth interest of the Dolores grant.

"8.   And the defendants also produced in evidence a deed from the corporation of C. R. Johns & Co. to them, May 5, 1883, which deed is sufficient to and does convey to defendants all the right in the Dolores grant then held by said corporation and no more.   Likewise a deed from C. R. Johns to defendants, dated May 5, 1883; said deed is sufficient to and does convey to defendants all the right held by said Johns at the date of said deed in the Dolores grant, and no more.

"9.   You are further instructed that the two last mentioned deeds can have no effect upon previous conveyances made by the corporation of Johns & Co. or by C. R. Johns; said deeds subsequently made convey such interest only as the grantors had at the date of their execution, and no more.

"10.   If, therefore, you find from all the facts and circumstances in evidence in this case that Johns & Co. procured the recognition of the Dolores title by the Commissioner of the General Land Office of the State of Texas, and caused said grant to be platted on the official map of the Land Office, and if you further believe from the evidence that Johns & Co. took possession of said land under the Beales title or claim and adjusted or settled the adverse claims thereto, and that said contract was duly performed by Johns & Co., you will find a verdict in favor of plaintiff.

"11.   If, however, you do not believe from the evidence before you that Johns & Co. did perform said contract, or that such acts as they did were not accepted or acquiesced in as a performance thereof, then you will find a verdict in favor of the defendants.

"12.   If you should find that Johns & Co. performed said contract, then you will next consider the extent of the claim made by the plaintiff, and whether the right of Johns and Kerbey, which is assumed to be an undivided one-half or a six-twelfths of the grant. has become vested in the plaintiff, less one-twelfth which plaintiff concedes has passed to the defendants through the deed of Thomas D. Johns, as before stated.

"13.   If you believe from the evidence that Kerbey did, by the consent of all the parties, withdraw a two-twelfths interest or claim in the Dolores grant, and that Johns likewise withdrew, by the consent of all the part-

ners, a one-twelfth interest in said grant, leaving as partnership assets owned by said firm a three-twelfths interest in said grant, and if you further believe from the evidence that the members of said partnership did, by mutual consent, incorporate themselves under the corporate name of C. R. Johns & Co., and that said partnership assets were, by the mutual consent of all the partners, thereafter treated and held by them as the property of said corporation, and that said former partners in lieu of their shares in said partnership accepted stock in said corporation, then if you find that Kerbey was the owner of a two-twelfths interest in said grant, Johns the owner of a one-twelfth interest in said grant, and that the corporation of C. R. Johns & Co. was the owner of a three-twelfths interest in said grant, you will, in such a contingency, find for the plaintiff the amount of land claimed in his petition, and you will find further that the balance of the land, being the seven-twelfths thereof, belongs to the defendants."

At the request of plaintiff the court gave the following charge:

"If the jury believe from the evidence that C. R. Johns and J. C. Kerbey, or either of them, original parties to the contract with Dr. Beales and wife, of date May 30, 1867, have personally or in association with or through the instrumentality of others under their control and direction performed said contract, or that what they have done has with the knowledge of the facts and circumstances been accepted by Dr. Beales and wife and their heirs and devisees as performance; and if the jury further believe from the evidence that said Johns and Kerbey have by agreement and arrangement with W. Von Rosenberg and F. Everett conceded to them an interest of one-twelfth each in the fruits and benefit of such performance, and that by further agreement and arrangement between C. R. Johns and W. Von Rosenberg and F. Everett three-twelfths interest was passed to the corporation of C. R. Johns & Co., and that said corporation acting by and through its sole members and incorporators, and that said Johns, Von Rosenberg, and Everett were at the time such sole incorporators, did convey said three-twelfths to an assignee for the benefit of creditors, and that said three-twelfths was sold by said assignee as the property and interest of the corporation, and was bought in by the said J. C. Kerbey and plaintiff R. F. Alexander, then the jury are instructed that as matter of law by reason of the transaction and conduct of the parties as aforesaid the said Johns, Kerbey, Von Rosenberg, and Everett, and all persons claiming under them, are estopped from denying that said three-twelfths passed to and was sold by said corporation, and that whatever right, if any, to said three-twelfths at any time vested under said contract in said Johns, Kerbey, Von Rosenberg, and F. Everett, or any or either of them, to the extent of three-twelfths thereof passed to and become vested in the said Kerbey and said Alexander, or purchasers at the assignee's sale as aforesaid.

"And in this connection the jury are further charged that if they believe from the evidence that the defendants acquired the Beales title with notice of the title set up by plaintiff, and bought the interest of Tom Johns or others, founded upon a recognition of the rights and interests of Johns, Kerbey, Von Rosenberg, and Everett, as the corporation of C. R. Johns & Co., as arranged and agreed upon between them, the defendants can not question such arrangements and can not dispute such title as the evidence shows the plaintiff to have acquired under or in pursuance thereof, though this will not prevent the defendants from showing that said title is in other respects invalid."

Defendants requested the following charge, which the court refused to give:

"You are instructed that there is no evidence of a written conveyance or a transfer to the corporation of C. R. Johns & Co. of any part of the land involved in this suit, and therefore the plaintiff can not recover the three-twelfths claimed by him through the corporation of C. R. Johns & Co."

The verdict of the jury was as follows:

"In the case of Alexander v. Carothers & Searight, we the jury find that Johns & Co. performed their contracts with Dr. Beales and wife, and plaintiff Alexander is entitled to five-twelfths of the land claimed by him, and we therefore find for the plaintiff."

The sixth, seventh, and eighth assignments relate to the introduction of evidence, and read as follows:

"6. The court erred in permitting the plaintiff to read in evidence the eighty-seventh interrogatory propounded by plaintiff to the witness C. R. Johns and the answer thereto, because said testimony in attempting to prove by parol interests in land is incompetent and irrelevant.

"7. The court erred in permitting plaintiff to read in evidence the third direct interrogatory propounded by plaintiff to the witness C. R. Johns in his supplemental deposition and the answer thereto, because the same was incompetent and irrelevant in attempting to prove a parol conveyance of an interest in land.

"8. The court erred in permitting the plaintiff to read in evidence the twenty-fourth interrogatory propounded by plaintiff to the witness W. Von Rosenberg and the answer thereto, and also in permitting the plaintiff to read in evidence the second direct interrogatory propounded by plaintiff to the said witness, in his supplemental deposition, and the answer thereto. Said testimony was irrelevant and incompetent in attempting to establish a parol conveyance to an interest in land."

The eighty-seventh interrogatory to C. R. Johns and his answer thereto read as follows:

Interrogatory 87. "Did you own any interest in the Dolores grant prior to the purchase by Carothers & Searight of the interest of the

Beales heirs?    If yea, please state what interest you owned; how was that interest divided; state fully and explicitly."

Answer.    "I owned in my own right an undivided one-twelfth interest in the Dolores grant, which was divided as follows under the original contract with Beales:  J. C. Kerbey and myself, who composed the original firm of C. R. Johns & Co., were entitled to one-half of said grant. About 1869 or 1870 we took into the firm of C. R. Johns & Co. W. Von Rosenberg and F. Everett, and by arrangement conveyed to them one-twelfth each of said grant, leaving two-twelfths belonging to me and two-twelfths to J. C. Kerbey.    A short time thereafter J. C. Kerbey withdrew from the firm, retaining his interest of two-twelfths.    Afterwards, to equalize the interests of the remaining partners, I withdrew and retained one-twelfth interest in my own right, leaving the other one-twelfth interest belonging to the firm, making the interest of C. R. Johns & Co. three-twelfths.    Two or three years ago my undivided interest of one-twelfth was sold under execution and bought in by J. C. Kerbey, who afterwards conveyed it to Thomas D. Johns."

The third interrogatory to C. R. Johns contained in his supplemental deposition and the answer thereto read as follows:

Interrogatory 3.    "After the incorporation of the firm of C. R. Johns & Co., in what manner was the interest of the firm or of individual members of the firm in lands, including the Dolores grant, conveyed to and vested in the corporation?  Were any formal conveyances executed by the firm or its members to the corporation for any interest in the Dolores grant?  If not, please state what arrangement, if any, was made touching this grant."

Answer.    "The same answer I made to interrogatory second I make to this.    I was of the impression that deeds were executed, but my memory now does not enable me to say positively and definitely on this point. I suppose that the assignee of C. R. Johns & Co. would have in his possession whatever deeds and papers were executed in this matter.    I only know that it was intended that everything owned by the firm did pass to and was owned by the corporation; all the property owned by the firm of C. R. Johns & Co. was passed to the corporation, and each member of the firm, to-wit, Johns, Everett, and Rosenberg, received in lieu thereof twenty-five thousand dollars of paid up stock in the corporation, making the entire stock of the corporation seventy-five thousand dollars."

The answer of the witness Von Rosenberg to twenty-fourth interrogatory contains the following statement:

"At reorganization of the firm of C. R. Johns & Co., in 1869, C. R. Johns and J. C. Kerbey agreed that the junior members of said firm, to-wit, F. Everett and W. Von Rosenberg, should have together an equal interest with each of them—that is, the half interest in said grant belonging to C. R. Johns & Co. was to be held as follows:  C. R. Johns one-third, J.

C. Kerbey one-third, F. Everett one-sixth, and W. Von Rosenberg one-sixth. In 1872 J. C. Kerbey withdrew from said firm, taking with him his interest in all lands or rights to lands then held, by contract or otherwise, by C. R. Johns & Co. The remaining members have always recognized J. C. Kerbey's interest in the Beales grant as one-third of one-half.

"In 1875 the firm of C. R. Johns & Co. dissolved by forming the corporation of C. R. Johns & Co., consisting of C. R. Johns, F. Everett, and W. Von Rosenberg, each member conveying an equal amount of property to said corporation. C. R. Johns, F. Everett, and W. Von Rosenberg each conveyed to said corporation one-sixth of one-half of said Beales grant, so that the said C. R. Johns & Co.'s one-half interest in said Beales grant was then held as follows: Corporation of C. R. Johns & Co. one-half of the one-half interest, or one-fourth of the whole; C. R. Johns one-sixth of the one-half interest, or one-twelfth of the whole; J. C. Kerbey one-third of one-half, or one-sixth of the whole."

All of this evidence was objected to as an attempt to prove an unwritten conveyance of land. The court overruled the objection and admitted the evidence.

The last witness testified that neither Johns nor Kerbey executed deeds to himself or Everett; that "no papers were ever passed" between said parties. He also testified that "the possession of the Dolores grant by tenants was uninterrupted from 1867 to 1876."

On the 1st day of January, 1875, proceeding under the laws of this State, C. R. Johns, F. Everett, and W. Von Rosenberg created a corporation named C. R. Johns & Co. for the purpose of carrying on a "real estate, general, and collecting agency, and in addition thereto as a separate, distinct branch of business, banking and exchange, and to perform such operations as are necessary and usually incident to said purposes." No written conveyances of the land in controversy appear to have ever been made to said corporation.

On the 18th of December, 1876, the corporation of C. R. Johns & Co., in consideration of its insolvency, made to A. J. Peeler an assignment of "all and singular the lands, tenements, hereditaments, real estate and interest therein, and chattels real of the said corporation lying and being situate in the State of Texas, as the same are described and enumerated in schedule A hereunto annexed, but for a more full description of said lands reference is here made to the deeds and title papers pertaining thereto now in possession of said party of the first part, which are to be delivered to the said party of the second part; and also all other lands and real estate and interest therein belonging to the party of the first part, if any such there be, not included in said schedule, though said schedule is designed and believed by the party of the first part to contain

a correct enumeration of all such lands and interests therein belonging to it."

The only reference in the deed of assignment or attached schedule that can be applied to the land in controversy occurs at the end of schedule A in the following words: "Our interest in the Beales grant, 80,000 acres at 30 cents, $24,000." The body of the assignment is signed as follows:

| | |
|---|---|
| "Attested: | "C. R. JOHNS, President, |
| [L. S.] | "C. R. JOHNS & Co., |
| "W. VON ROSENBERG. | "A. J. PEELER." |

It was acknowledged for registration by C. R. Johns and recorded. Schedule A purports to contain a "list of lands belonging to C. R. Johns & Co., C. R. Johns, F. Everett, and W. Von Rosenberg."

On the 17th day of March, 1879, A. J. Peeler, as assignee of the corporation of C. R. Johns & Co. under the said deed of assignment, sold and conveyed to J. C. Kerbey and R. F. Alexander land described as follows: "All the right, title, interest, and claim, legal and equitable, of the said corporation of C. R. Johns & Co. in and to a certain eleven league grant of land granted to Dolores Soto de Beales by the (Spanish) Mexican Government on the 15th day of April, 1834, the said grant being situated in Kinney County, State of Texas, on the Las Moras Creek," and further describing the land by metes and bounds.

On the 22d day of November, 1883, J. C. Kerbey deeded to plaintiff R. F. Alexander all of his "right, title, interest, and claim, estimated at thirteen thousand one hundred and eighty-four acres of land and part of the Dolores Soto de Beales eleven league grant, situated on the Las Moras, in Kinney County, State of Texas, said amount being an undivided interest in said eleven league grant of one-sixth thereof, by virtue of original contract and conveyance by J. C. Beales and Dolores Soto de Beales to C. R. Johns and J. C. Kerbey, and also by virtue of a deed from Thomas D. Johns to said J. C. Kerbey (a tax title), and an undivided interest of C. R. Johns & Co. conveyed to J. C. Kerbey and R. F. Alexander by A. J. Peeler, assignee of C. R. Johns & Co."

On the 5th day of May, 1883, C. R. Johns conveyed to defendants Carothers & Searight by quit claim deed all of his right, title, and claim in and to the Doña Dolores Soto de Beales eleven league grant in Kinney County, Texas.

On the same date Thomas D. Johns conveyed to defendants an undivided one-twelfth interest in the same grant that had been conveyed to him by J. C. Kerbey, who had previously purchased it at sheriff's sale made under a judgment and execution against C. R. Johns.

It will be seen that plaintiff's claim of title to an undivided five-twelfths of the land depends upon the following state of facts:

1.   The contract between Beales and Kerbey and Johns, dated 30th day of May, 1867.

2.   The performance of their part of said contract by Johns and Kerbey.

3.   A conveyance by Johns and Kerbey of three-twelfths interest in the eleven leagues to the partnership of C. R. Johns & Co. when composed of C. R. Johns, J. C. Kerbey, F. Everett, and W. Von Rosenberg.

4.   A conveyance of the last named three-twelfths interest by the firm of C. R. Johns & Co., when composed of C. R. Johns, F. Everett, and W. Von Rosenberg, to the corporation of C. R. Johns & Co.

5.   A conveyance of the same three-twelfths interest by the corporation of C. R. Johns & Co. to A. J. Peeler.

6.   A conveyance of the same interest by Peeler to Alexander and Kerbey.

7.   A conveyance of his interest by Kerbey to Alexander.

Some of the required links are not in writing, and unless some state of facts exists relieving this title from that requirement it must be held defective in so much as it depends upon parol transfers.

The court, by permitting evidence of transfers not in writing to go to the jury over objections, and by its charge that those in whom the written transfers vest the legal title are estopped under the circumstances in proof from denying that the title to the three-twelfths interest passed first to the partnership and then to the corporation of C. R. Johns & Co., relieved the transactions in question from the operation of the rule requiring them to be in writing. We are unable to see anything in the facts of this case creating a title by estoppel, either in the firm of C. R. Johns & Co. of which Everett and Von Rosenberg were members or in the corporation of the same name.

A number of individuals owning lands do not by the mere act of associating themselves together as partners invest the firm with a title to their real estate; nor can a firm by the mere act of incorporating themselves by the same name invest the corporation with the title to the real estate owned by the firm.

Nothing more appears in this case than that when the owners of the land desired to transfer the title to a partnership, and when the partnership afterwards desired to transfer the same title to a corporation, instead of making the conveyances in writing it was attempted to be done by verbal agreements, which the parties afterwards acquiesced in and did nothing more.

This does not any more than any other parol agreement for the sale of land create a title, legal or equitable, by estoppel or otherwise.

The rule that land belonging to a partnership under some circumstances and for some purposes is treated in equity as personal property can not control or affect the question before us. When the rule does ap-

ply it has a limited operation confined to the administration and adjustment of partnership affairs, and does not affect the mode or change the law regulating the transfer of the title, which must still be in writing.

In order that the equities of partners, whatever they may be, may be applied to their real estate, it is not necessary to hold that in their transactions with regard to it the statute of frauds is abrogated or that the links in the chains of title coming through a partnership need not be in writing.     Devl. on Deeds, sec. 50; Pars. on Part., *367–9.

The court committed error in its rulings with regard to the admission of evidence and in giving charges recognizing that the firm or the corporation of C. R. Johns & Co. had acquired any title under the circumstances of this case, and likewise erred in refusing to give the charge on that subject requested by defendants.

In other respects with regard to title we think that the charge was correct, except that the court should have construed the contract and might well have gone so far as to instruct the jury that the contract, in connection with the uncontroverted evidence of what was done and caused to be done under it by Johns and Kerbey, was sufficient to vest in them the equitable title to one-half of the eleven league grant.

It follows that though Kerbey and Alexander acquired nothing through the conveyance of A. J. Peeler to them, because neither the corporation nor the firm that it succeeded had acquired any part of the title of Johns or Kerbey, that Kerbey, instead of holding title only to the two-twelfths that he had never pretended to transfer to the firm, also owned the one-twelfth which he had proposed to transfer but had not in fact done so. We think his deed to Alexander undertaking to convey a larger interest than he really owned was good and effective to convey the three-twelfths interest that he did in fact own.

Notwithstanding C. R. Johns was in some respects in the same position as Kerbey with regard to the title, he was not so in all.   Notwithstanding he as president of the corporation signed the deed purporting to convey an interest of the corporation in the land, when he and not the corporation owned the land, we do not think that deed, under the circumstances of this case, carried his interest by estoppel.

The form and terms of the deed influence us to this conclusion.  If it had been an absolute conveyance of the entire interest in the land by the corporation, and the deed had been executed by Johns as president of the corporation when he himself owned the property, we think the deed would have passed his title by estoppel.

But in fact the deed only assumes to convey the right of the corporation to an undefined and indefinite interest, and at the same time recognizes an undefined interest in the same land in C. R. Johns that it does not convey.   This we think must prevent the deed from operating on the

interest of Johns and from conveying anything save the interest of the corporation.

A proper construction of the evidence leads, we think, to the conclusion that the plaintiff established title to three-twelfths of the land in controversy and the defendants to the remaining nine-twelfths.

The court erred in not granting defendants a new trial.

We do not think it useful to discuss in detail all of the assignments of error. What we have said indicates our views of the material aspects of the case, and except as referred to in what we have said we have not found in the record before us what we consider material error.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Delivered June 11, 1889.