Pauline Stahl **TOTZ** et vir, Appellants,

v.

Dorothy H. **STAHL** et al., Appellees.

No. 13336.

Court of Civil Appeals of Texas.

San Antonio.

May 7, 1958.

Rehearing Denied June 4, 1958.

**346**

Herman Glosserman, San Antonio, for appellants.

R. L. Miller, Gonzales, for appellees.

BARROW, Justice.

This suit was brought by appellees, Dorothy H. Stahl and her daughter, Dianne Stahl Wood, joined by her husband, Ernest Wood, against appellants, Pauline Stahl Totz and her husband, Melvin Totz, for dissolution of an alleged partnership, for a partition of real and personal property, for an accounting and settlement between the parties, and for the appointment of a receiver.

The case was tried to the court without a jury, and judgment rendered dissolving the existing partnership, adjusting the equities between the parties on accounting, ordering the partition of the real and personal property, and appointing a receiver to sell the assets and divide the proceeds. From that judgment Pauline Stahl Totz and her husband, Melvin Totz, have appealed.

The trial court filed findings of fact and conclusions of law, and found that Jake Stahl is the common source of title to Lots Nos. 5 and 6 in Block 10, in the original town of Gonzales, Gonzales County, Texas, and that Selma Bath Stahl is the common source of title to portions of Lots Nos. 1 and 2 in Block 10 in the original town of Gonzales, the two tracts constituting the real estate involved in this suit.

The court found:

That about the month of June, 1941, Jake Stahl and his wife, Selma Bath Stahl, were the owners of a poultry killing and processing business in the town of

Gonzales and were operating the same. The business consisted of killing and processing chickens, turkeys and other meats, in preparation for market. The property consisted of an original building, together with machinery, equipment, fixtures, tools and personal property of various kinds, located in or appurtenant to the building and appertaining to the business.

That about said month of June, 1941, Jake Stahl executed a conveyance in trust for his son, Marvin W. Stahl, under which trust conveyance an undivided one-fourth interest in said Lots 5 and 6 in Block 10, together with the personal property above mentioned, was conveyed in trust for the benefit of said son, with the provision that upon the death of Jake Stahl the property held under said trust should pass to and vest in fee simple in Marvin W. Stahl. That on the same date, Jake Stahl and his wife, Selma Bath Stahl, executed a deed of gift in trust for the benefit of their daughter, Pauline Stahl Totz, by the terms of which they conveyed to Jake Stahl as trustee an undivided one-fourth interest in the real estate and personal property above mentioned, with the provision that said trust should be for the lifetime of the survivor of Jake Stahl and Selma Bath Stahl, and that upon the death of the survivor said property should be delivered to and vest in Pauline Stahl Totz as her separate estate in fee simple. That on the same date said Jake Stahl executed and delivered to his wife, Selma Bath Stahl, a deed conveying to her as her own separate property and estate his remaining one-half interest in said real estate and personal property.

That on or about the 11th day of May, 1948, Selma Bath Stahl executed and delivered to Marvin W. Stahl and Pauline Stahl Totz, a deed conveying to Marvin W. Stahl and Pauline Stahl Totz, as a part of her separate property and estate, an undivided one-half interest in certain portions of Lots Nos. 1 and 2 in Block 10 in the original town of Gonzales, Gonzales County, Texas, being the balance of the real estate involved in this suit.

That Selma Bath Stahl died on or about the 22nd day of February, 1949, being the owner of the undivided one-half interest in all of the real estate above described, leaving a written will which was duly probated. In her will Selma Bath Stahl devised and bequeathed all her property and assets to her son, Marvin W. Stahl, and Pauline Stahl Totz, share and share alike.

That after the death of Jake Stahl, his son, Marvin W. Stahl, and his widow, Selma Bath Stahl, acting for herself individually and as trustee for her daughter, Pauline Stahl Totz, continued to operate said business until her death in 1949. Said business, at all times pertinent to this suit, being operated under the trade name of "Stahl Brothers." That upon the death of Selma Bath Stahl in 1949, Marvin W. Stahl, together with Melvin Totz and Pauline Stahl Totz, continued to operate said business under the same trade name and in the same manner, and set up their respective portions and shares in said firm by mutual agreement according to the book value of such shares, according to the books and records of said business. The business was thus operated until the 13th day of December, 1952, when Marvin W. Stahl died, leaving a written will which was duly probated. Under the terms of his will Marvin W. Stahl left his estate, one-half to appellee Dorothy H. Stahl, his widow, and their daughter, Dianne Stahl, share and share alike, and created a trust over the one-half devised and bequeathed to his daughter, with his widow as trustee, said trust to continue until said Dianne Stahl should become twenty-one years of age or should marry, whichever should occur first.

That prior to the death of Selma Bath Stahl there was commenced and in process of construction, an equipment and killing room, situated on that part of Lots Nos. 1 and 2 in Block 10, above mentioned, and in connection therewith the real estate

involved in this suit was mortgaged to R. C. Nagel, under a mechanic's lien securing the notes executed in the total sum of $35,000. These notes were assigned by Nagel to Josephine Peck Black, and this indebtedness was renewed by a deed of trust executed by Marvin W. Stahl, individually and as independent executor of the estate of Selma Bath Stahl, deceased; by his wife, Dorothy H. Stahl; by Pauline Stahl Totz, individually and as independent executrix of the will and estate of Selma Bath Stahl, deceased; and by Melvin Totz. Under date of June 27, 1949, the building and real estate involved were also mortgaged, by a second lien, to Joe Stahl, for the sum of $44,000.

That immediately after the death of Selma Bath Stahl, the capital account of Selma Bath Stahl, as reflected by the books, was $86,215.17; the capital account of Marvin W. Stahl was $26,938.93; and the capital account of Pauline Stahl Totz was $27,872.07. The land, buildings, improvements, machinery and equipment were valued at $86,829.99. The current assets of such business amounted to $156,206.61, and the current indebtedness, to $52,462.93.

That following the death of Selma Bath Stahl, the capital accounts of the firm were carried on the books, one-fourth in the name of Marvin W. Stahl, one-fourth in the name of Pauline Stahl Totz, and one-half to the account of the estate of Selma Bath Stahl, deceased.

That after the death of Selma Bath Stahl there was no express agreement of partnership between the parties, but the business continued to operate, and was operated by Marvin W. Stahl and Melvin Totz as managers, and the profits arising from such business were claimed in the respective shares and portions above set forth, and during said time said funds belonging to the estate of Selma Bath Stahl in the aggregate amount of $32,457.98, belonging one-half to Marvin W. Stahl and one-half to Pauline Stahl Totz, were transferred to the firm of Stahl Brothers

and credited to the capital account of Selma Bath Stahl estate.

That after the death of Marvin W. Stahl the business was carried on as before, under the trade name of "Stahl Brothers," and was operated by Melvin Totz, as manager, and Dorothy H. Stahl, widow of Marvin W. Stahl, with the understanding, entered into during the month of May, 1955, that Melvin Totz should draw a salary of $137.50 per week, and Dorothy H. Stahl should draw $100 per week.

That about the month of June, 1954, the capital account of the Selma Bath Stahl estate was transferred, one-half to the capital account of Pauline Stahl Totz and one-half to the estate of Marvin W. Stahl, deceased. That thereafter the one-half of said estate belonging to the estate of Marvin W. Stahl, deceased, was transferred and credited to the account of Dorothy H. Stahl and the account of Dorothy H. Stahl, trustee, one-half to each.

That at all times since the year 1932, Pauline Stahl Totz was a married woman and the wife of Melvin Totz, and that her disability of coverture has never been removed. That about the month of October, 1956, Melvin Totz, without the consent of Dorothy H. Stahl began paying himself out of such firm the amount of $200 per week as his salary, and has continued to draw said amount for thirty-three weeks.

That from and after the death of Selma Bath Stahl, Pauline Stahl Totz had a drawing account with said firm, which was charged to her capital account at the end of each year, and that during the period of time from February, 1949, until the filing of this suit, the sum of $39,843.37 was drawn by the said Pauline Stahl Totz. That during the period of time from the death of Selma Bath Stahl until the filing of this suit, there was paid out of the partnership funds of the firm of "Stahl Brothers," the aggregate sum of $21,000 on the principal of the Josephine Peck Black note, and the further sum of $8,125 as interest; and that there was paid to Joe

Stahl, out of such partnership funds, the sum of $15,000 on the principal of his note, and the further sum of $14,940 as interest.

That the firm of Stahl Brothers, during the period from the death of Selma Bath Stahl to the date of the filing of this suit, paid the sum of $63,881.65 out of partnership funds, for permanent improvements to the real estate above mentioned, with the consent, concurrence and agreement of Pauline Stahl Totz; and paid the further sum of $12,371 out of partnership funds, for taxes on the property. That the aggregate net profits of the firm or firms of Stahl Brothers, from the time of the death of Selma Bath Stahl until the filing of this suit is $20,798.63.

That after the death of Marvin W. Stahl his daughter, Dianne Stahl, married the appellee Ernest Wood, and her estate formerly held in trust is now vested in her.

The trial court concluded:

That the above mentioned land, buildings and fixtures permanently attached thereto, are owned by Dorothy H. Stahl, Dianne Stahl Wood and Pauline Stahl Totz, jointly or in common in the shares and portions as follows: Dorothy H. Stahl and Dianne Stahl Wood, each being the owner of an undivided one-fourth interest therein, and Pauline Stahl Totz being the owner of an undivided one-half interest therein.

That prior to the death of Selma Bath Stahl a valid partnership existed between Selma Bath Stahl, Marvin W. Stahl and Selma Bath Stahl as trustee for Pauline Stahl Totz. That such partnership was dissolved by operation of law upon the death of Selma Bath Stahl.

That upon the dissolution of said firm, the properties of said firm vested, as a matter of law, subject to the payment of debts, in Marvin W. Stahl and Pauline Stahl Totz, equally share and share alike.

That the note of $35,000, payable to Josephine Peck Black, was secured by a valid lien upon the real estate above mentioned, and was and is a valid obligation for which the separate estate of Pauline Stahl Totz and also Melvin Totz, and the estate of Marvin W. Stahl and the estate of Selma Bath Stahl are personally liable.

That the note of Joe Stahl was and is secured by a valid lien against said real estate and building, and such debt is a valid obligation for which the separate estate of Pauline Stahl Totz and also Melvin Totz, and the estates of Dorothy H. Stahl and Dorothy H. Stahl as trustee, and Dianne Stahl Wood, are each liable.

That a partnership agreement between Marvin W. Stahl and Pauline Stahl Totz arose by implication from the acts and conduct of such parties immediately following the death of Selma Bath Stahl, but that such partnership was invalid, because Pauline Stahl Totz was then a married woman whose disabilities of coverture had never been removed. That the separate estate of Pauline Stahl was not liable for any debts incurred by such partnership.

That Melvin Totz became a partner in such firm of Stahl Brothers following the death of Selma Bath Stahl, and that such partnership was dissolved as a matter of law upon the death of Marvin W. Stahl.

That immediately following the death of Marvin W. Stahl a partnership and partnership agreement arose, by implication and by acts of the parties, between Pauline Stahl Totz and Dorothy H. Stahl, both individually and as trustee for Dianne Stahl Wood; but that said partnership agreement was void because of the fact that Pauline Stahl Totz was then a married woman whose disability of coverture had never been removed. That Melvin Totz became a member in the firm of Stahl Brothers, and as such is entitled to one-half of the profits and chargeable with one-half the losses of such firm. Upon the formation of the partnership following the death of Selma Bath Stahl, said Pauline Stahl Totz became a creditor against the firm of Stahl Brothers in the sum of $51,871.84, representing

one-half of the difference between the current assets and the current indebtedness of said firm at said time. That she also became a creditor against the firm of Stahl Brothers in the further sum of $16,228.99, representing one-half the amount belonging to the estate of Selma Bath Stahl, which was turned over to and invested in said firm.

That the firm of Stahl Brothers is entitled to offsets against the indebtedness of the firm to Pauline Stahl Totz in the following amounts: The sum of $39,843.37, withdrawn by and paid to Pauline Stahl Totz after the death of Selma Bath Stahl; the sum of $29,932.50, representing one-half of the aggregate amount expended by said firm to pay the obligations due to Josephine Peck Black and Joe Stahl after the death of Selma Bath Stahl; the sum of $31,940.82, being one-half the amount expended for and the value of permanent improvements made upon the real estate above mentioned; the sum of $6,185.50, representing the aggregate amount paid by said firm for taxes assessed against the separate property of Pauline Stahl Totz after the death of Selma Bath Stahl; and the sum of $15,074.95, representing one-half the amount expended by said firm after the death of Selma Bath Stahl to keep in repair the property in which Pauline Stahl Totz owned an undivided one-half interest.

That the debts and liens of Joe Stahl and Josephine Black constituted a claim against the real estate and buildings belonging to the parties and should be paid out of the sale price of such real estate, and that all other debts created on the books of the firm of Stahl Brothers should be paid out of current assets and personal property belonging to said business.

That because of disagreements of the parties upon basic policies, and in order to pay partnership debts, the appointment of a receiver to liquidate the assets of the firm of Stahl Brothers is necessary; and

because said real estate is incapable of partition and division in kind, it is necessary to appoint a receiver to sell said real estate, including the building and permanently attached fixtures, for the purpose of paying the secured debts and mortgages thereon and making division of the balance of the proceeds between the parties in accordance with their respective interests.

■ The appellants contend that on account of the continuation of the business after the death of Selma Bath Stahl, all of the property, including the real estate belonging to Marvin W. Stahl and Pauline Stahl Totz, by operation of law, went into the firm of Stahl Brothers, and that Pauline Stahl Totz became a creditor of the firm to the extent of the value of her one-half interest in the real estate and personal property thereof. We overrule this contention. Title to the real estate could not pass except by valid conveyance in writing. Art. 3995, Vernon's Ann.Civ.Stats; Carothers v. Alexander, 74 Tex. 309, 12 S.W. 4; West Side Oil Co. v. McDorman, Tex. Civ.App., 244 S.W. 167, 32 Tex.Jur. 289.

■ Appellants contend that the court committed error in not allowing Pauline Stahl Totz, as her interest in the firm of Stahl Brothers at the time of the death of her mother, Selma Bath Stahl, the sum of $70,979.65, rather than the sum of $51,871.-84. We overrule this contention. The figure is correctly arrived at by subtracting the current liabilities from the current assets and by dividing the result into two shares.

■ Appellants complain of the ruling of the trial court in allowing appellee Dorothy H. Stahl to draw salary after the death of her husband, Marvin W. Stahl, until the filing of the suit. We overrule this contention. The record shows that after the death of Marvin W. Stahl, his widow, Dorothy H. Stahl, and Melvin Totz, owners of the business at the time, continued to operate it and mutually agreed

upon the amount of salary to be drawn by each of them.

By their sixteenth point, appellants contend that the trial court should have charged the estate of Marvin W. Stahl and Dorothy H. Stahl, individually, with certain withdrawals made by them after the death of Selma Bath Stahl, in the adjustment of equities with Pauline Stahl Totz. This point is without merit, since Pauline Stahl Totz at that time was only a creditor of said firm and had no interest therein, since in the adjustment she received credit for all of her property and funds that went into the business.

■ Appellants contend that there is no evidence that the property involved herein, including the real estate, is incapable of partition in kind, authorizing the appointment of a receiver to sell the same and divide the proceeds. This contention is also without merit. The evidence is undisputed that this is a one-unit business, housed in one large building, situated on town lots, and all the fixtures, machinery, equipment and merchandise are a part of the single business. This evidence is sufficient to support the trial court's finding.

Appellants contend that the court erred in taxing one-half the costs of the receivership against Pauline Stahl Totz and argue that it was the duty of Dorothy H. Stahl, as surviving partner, to close out the business. This contention is without merit. The trial court found, which finding is supported by the evidence, that after the death of Marvin W. Stahl, Melvin Totz and Dorothy H. Stahl, by their acts and conduct, impliedly entered into a partnership which continued until the filing of this suit.

We have examined all other points and cross-points and have concluded that they are without merit.

Being of the opinion that the trial court's findings of fact are supported by the evidence and that his conclusions are correct, the judgment is affirmed.