KANAMU (w.) *vs.* W. C. PARKE, Administrator, *et al.*

IN EQUITY.    BEFORE ALLEN, C.J.

AUGUST, 1872.

The Court declines to set aside a deed, and a mortgage made by the vendee, there being no sufficient proof of fraud in regard to the deed, and the mortgagee having no notice of fraud, if there had been any.

DECISION OF ALLEN, C.J.

This is a bill in equity in which the plaintiff alleges that she was induced by the fraudulent representations and by improper influences of J. L. Desha to make a conveyance to him of a certain piece of land, situated in Honolulu, and which he subsequently conveyed by a mortgage to S. B. Dole.

It is admitted that Dole received the mortgage *bona fide,* and without knowledge of the alleged fraud of his grantor, and that he paid therefor a valuable consideration, and the first question submitted to the Court is, whether the mortgage deed made and executed by Desha to said Dole is void, although the deed from complainant was fraudulently obtained by said Desha.

It is contended by the counsel for the complainant that the deed to Desha is void *ab initio,* and that no right can be derived from an act founded in actual fraud. This is true doctrine as applied to all persons who participate in the fraud. The complainant makes a deed which is acknowledged and recorded, and the respondent is a *bona fide* mortgagee of her grantee. Both of these parties are innocent of fraud; then as a matter of equity, who shall suffer? Most certainly the one who is the original cause of the loss. Had the complainant exercised a proper precaution, she need not have been deceived by Desha, and had she not conveyed to him, Dole would not have been Desha's mortgagee. If Dole incurs a loss, the complainant is the cause of it. The remedy of complainant was against Desha in his life-time, or against his estate after his death. The respondent finds a sound record title and relies upon it.

In *Beam vs. Smith,* 2 Mason, 274, Judge Story says that it has been the policy of the law since the time of Henry VI., to support *bona fide* purchasers for a valuable consideration. It is a great object of the law to afford certainty and repose to titles honestly acquired.

In the case of *Jackson vs. Walsh,* 14 Johns., 407, the Court say, "It has been a long and well settled principle that a purchaser for a valuable consideration without notice has a good title, although the purchaser of one who had obtained the conveyance by fraud."

The counsel for complainant has cited the case of *Sands vs. Codwise,* 4 Johns., 598, in which Chancellor Kent says, " On the ground of absolute fraud, the deeds were void to all intents and purposes. A fraudulent conveyance is no conveyance as against the interest intended to be defrauded. It is impossible that these deeds can be permitted to stand as a security, if they are to be adjudged bad *ab initio.* I presume there is no instance to be met with of any reimbursement or indemnity afforded by a Court of Chancery to a *particeps criminis* in a case of positive fraud." This is sound doctrine; a *particeps criminis* in fraud is not entitled to relief, and a deed

by which the parties convey with the intention to defraud is void as against creditors, as in the case of the creditors of Sands, supra, but in the case at bar it is admitted that the mortgagee took the conveyance *bona fide.* There was no taint upon this transaction, and this is the distinction in the cases.

Chief Justice Parker, in the case of *Somes vs. Brewer,* 2 Pick., 191, says: "There is not a single case in law or equity, where a *bona fide* purchaser has been deprived of his title by the proof of fraud practiced by his grantor upon the person of whom he purchased:" unless it be the case of *Prescott vs. Crofut,* 1 Conn. R., 527, where the doctrine was maintained that a *bona fide* purchaser without notice and for a valuable consideration, from a fraudulent grantee, had no title against the creditors of the fraudulent grantor. This doctrine was approved by Chancellor Kent, as appears by his opinion in the case of *Roberts vs. Anderson,* 3 Johns. Ch. Rep., 379. But the decree of the Chancellor was reversed in the Court of Errors, conformably to the opinion of the law judges of that state.

In the proviso of the 27th Elizabeth, there is no qualification or limitation as to the person from whom the estate is acquired, but Justice Story says that it has always been held to apply equally to estates derived from the fraudulent grantor or grantee. He says, further, that under the statute of 13th Elizabeth, the estate is not utterly void as to all persons, but voidable, and voidable by creditors only, and a *bona fide* transfer by the grantee ought to convey the estate purged of the fraud.

He says also, in case of *Bean vs. Smith, supra,* that a conveyance to defraud purchasers, or creditors even, is not utterly void as has been sometimes supposed; it conveys the estate effectually as between the parties and their representatives, and the estate may be maintained against all persons but those whom it was intended to defraud.

By the statute of 13th and 27th Elizabeth, fraudulent conveyance is declared utterly void as to the persons intended to be defrauded, and is limited to those persons. In this latter

statute there is a special provision, saving a conveyance made *bona fide* and upon good consideration. The same protection is extended to every mortgage made *bona fide* and without fraud or covin upon good consideration.

In the case of *Hildreth vs. Sands,* 2 Johns. Ch. 35, Chancellor Kent recognizes the doctrine that a deed fraudulent on the part of the grantor may be avoided, though the grantee be a *bona fide* purchaser, and ignorant of the fraud. The Chancellor in the subsequent case of *Roberts vs. Anderson,* 3 Johns. Ch. 378, says: "The statute in its enacting clause operates on the deed from the fraudulent debtor, and the proviso in the act applies to the original conveyance from the debtor and saves it when made to a *bona fide* purchaser for a valuable consideration. Such a conveyance is supported by the proviso, however fraudulent the intention of the grantor might be, and the contrary impression which I had once received on this point from some of the English cases, without at the time adverting to this proviso, and which led me to the dictum in *Hildreth vs. Sands,* was properly corrected by Mr. Justice Spencer when that case was before the Court of Errors. 14 Johnson, 498." Mr. Justice Spencer says that the act shall not be construed to impeach or make void any conveyance of lands made upon good consideration and *bona fide* to any person not having notice or knowledge of the covin or fraud specified in the act. The grantor may intend a fraud, but if the grantee is a fair, *bona fide,* and innocent purchaser, his title is not to be affected by the fraud of his grantor.

The terms "void" and "voidable" are often used without precision. If a deed is absolutely void, it cannot be the source of a title: if voidable only, as between the parties, it may be. The deed by the complainant to Desha, if fraudulent, was void between the parties, but voidable only, as to subsequent purchasers, or creditors, dependent upon the proof of fraud. No one should be protected in enabling his grantee to commit a fraud upon an innocent purchaser, although he may not have had guilty intention. Every man must be responsible for his

acts, and if by carelessness or a feeling of confidence in a friend he suffers himself to be deceived, it is manifest that he should suffer loss, rather than an entirely innocent person.

It is contended further, that as the complainant had continued in possession of the land, that this was sufficient notice to the party not to take a title from her grantee. But, in answer, it is said, that as a registry for deeds is established by law, where deeds may be recorded, this is a notice to the world of the state of the title.

This may be rendered inconclusive by notice to the party of a prior conveyance from the same grantor, or of a conveyance fraudulently obtained.

In the case of *Bell vs. Twilight,* 18 N. H., 164, the Court say: "It would greatly infringe upon the beneficent policy of the registry laws to charge the public with notice of any estate that a party in possession might acquire. The possession has, in fact, in such cases, no tendency to put men upon enquiry."

It is contended further, by the counsel for the plaintiff, that there is no difference in principle in the case we have been considering and that of a forged deed. But the authorities recognize the doctrine, that in the one case the deed is voidable between the parties, and in the other absolutely void. Chief Justice Parker says, in the case of *Somes vs. Brewer,* 2 Pick., 203: "The man who voluntarily signs and seals a deed, knowing its contents, though cheated into the act, may choose nevertheless to let the deed stand; and if he does until an honest purchaser, confiding in his act, and who is never apprized by him of any defect, pays his price and takes possession, all the principles of justice forbid him from avoiding the title." In the one case, the party has not executed the deed, and therefore should not be bound, and in the other, has executed the deed, and should be bound, so far as innocent parties are concerned.

The counsel further contends that when a signature is fraudulently procured to a writing under pretence that it is another and different writing, whereby the person signing the same is deceived and signs the same for such other and

different writing, the person who thus procures the signature shall be subject to the same penalty as if guilty of forgery. Penal Code, ch. 30, p. 70. I have no doubt of the correctness of this position, for in both cases the act is a felony, and no right of property can be acquired under it, for a felon can convey none. Governed by these principles, the Court will decide this case according to the evidence which may be given.

The material question which remains to be decided upon the evidence is: Did Desha fraudulently procure the signature of Kanamu to the deed in question, under the pretence that it was another and different writing, whereby she was deceived, and signed the same, for such other and different writing?

There was some testimony as to the declarations of the complainant about the disposition of her property. At one time, she said she had made a will, giving Desha all her property in consideration that he should take care of her during her life, and also of a child who was living with her. There was also testimony in relation to conversation between complainant and Desha in relation to the disposition of the property. He said she ought to make a will in his favor, as he had taken charge of her property for years, but there is no evidence that she did make a will. The evidence adduced would have had some weight, perhaps, in connection with other evidence, to set aside a conveyance as between the parties, but not to vacate a title in the hands of a *bona fide* purchaser.

The only evidence in relation to the execution of the deed was given by David Kalakaua, who swears positively that he interpreted the deed to her, clause by clause; that she perfectly understood its contents, and that she said it was all right, and then signed it. He further testifies, that Desha had charge of her affairs, and that he heard a conversation between them at one time in relation to the support or advances made by him, and he wished her to make a deed of the property, and she said she would do so.

The deed was acknowledged by Mr. Brown, the Registrar of Conveyances, at the time.

No evidence is introduced to invalidate the testimony of Kalakaua, and as he swears positively to the execution of the deed, and that she knew its contents and approved of the same, the allegation that the signature was fraudulently obtained, and that the complainant supposed that she was signing a paper for a different purpose than that expressed in the deed, is wholly disproved.

The judgment of the Court is that the bill be dismissed, each party to pay his own costs.

*W. C. Jones,* for plaintiff.

*S. B. Dole,* for defendant.

August 30, 1872.