ABE JESSON AND WIFE v. TEXAS LAND AND LOAN COMPANY.

No. 74.

1. **Recitals—Trust Deed and Sale.**—In a trust deed was a clause, that the recitals in the deed by the trustee to a purchaser should be full evidence of the truth of the matters therein stated. In a deed made by the trustee to a purchaser were recitals touching the nonpayment of the debt, notices of sale, etc. *Held*, such recitals were binding upon the makers of the trust deed in suit against the purchaser.

2. **Proof of Agency—Circumstances.**—In order to prove agency, and through such proof to affect the principal with knowledge of facts which would avoid a sale of the homestead of the grantors, who were husband and wife, it is competent to prove the letters and dealings between the principal and agent in other like transactions before and after, and the letters and declarations of the agent touching other like transactions. See example.

3. **Practice.**—Where there is testimony, although apparently disproved, to support an issue, it is error in the court to withdraw the issue from the jury. See example.

APPEAL from Coleman. Tried below before Hon. J. W. TIMMINS.

*T. J. White* and *Will L. Vining*, for appellants.—1. Before the trustee's deed can be introduced in evidence, a full compliance with the conditions and terms of the deed of trust must be shown to have been complied with. Williams v. Davidson, 43 Texas, 2; Railway v. Brownsville, 45 Texas, 88; Hurt v. Cooper, 63 Texas, 362; Perry on Trusts, secs. 602p, 602q, 602x.

2. The appellants, Abe and H. S. Jesson, having alleged that Peter G. Rucker was an agent of the Texas Land and Loan Company at the time of the negotiation of the Jesson loan and the conditional sale of the land, and the appellees having denied the same, an issue was presented, and it was error to refuse to permit appellants to prove acts and circumstances going to prove agency as alleged in Peter G. Rucker, it being material for the purpose of bringing home notice of the entire transaction to the appellee, the Texas Land and Loan Company. Jacobs, Bernheim & Co. v. Cumby & Jones, 2 Willson's C. C., sec. 586; Wheeler & Wilson Mfg. Co. v. Crossland, 2 Willson's C. C., sec. 80; Railway v. Roundtree, 2 Willson's C. C., secs. 387–389; Mortgage Co. v. Morton, 10 S. W. Rep., 301; Collins v. Cooper, 65 Texas, 464; Mech. on Ag., 83, 84; 1 Am. and Eng. Encycl. of Law, 341, and notes; Reynolds v. Collins, 78 Ala., 94; Proctor v. Tous, 115 Ill., 138; Singer v. Holport, 36 Ill., 455; Franklin v. Ins. Co., 52 Mo., 561; Ketchum v. Verdel, 42 Ga., 5; Bank v. Dondridge, 12 Wheat., 64.

*Davidson & Minor*, for appellee.—1. Under the terms and provisions of the deed of trust from J. C. Averett to J. B. Coleman, as trustee, and

by the recitals in the deed from Coleman, as trustee, to appellee, a full compliance with all the terms and conditions of the trust deed was shown. 2 Jones on Mort., sec. 1895.

2. It was not competent to show that Rucker was appellee's agent by proof of his own statements to that effect, or by showing that he acted as agent, or that he claimed to have the powers which he assumed to exercise. Mech. on Ag., secs. 771, 773; Smith v. Kron, 96 N. C., 392.

3. The fraudulent conduct of the agent revoked his authority. His fraud was known to defendants, and was participated in by them. They can not take benefit by his knowledge as against his principal, and avail themselves of his agency. Life Assn. v. Parham, 80 Texas, 518; Heilbroner v. Douglass, 32 Texas, 215; Ins. Co. v. Minch, 53 N. Y., 150; Smith v. Ins. Co., 24 Pa. St., 320.

COLLARD, ASSOCIATE JUSTICE.—This suit was instituted on the 5th day of March, 1888, by the appellee, the Texas Land and Loan Company, alleged to be a corporation duly incorporated under the laws of Texas, having its domicile at Galveston, Texas, in form of trespass to try title to recover of Abe Jesson and his wife H. S. Jesson, and J. C. Averett, of Coleman County, 960 acres of land, 200 acres being a part of the Charles Smith survey, and surveys numbers 281 and 282, International & Great Northern Railway Company, all described in the petition.

Defendants answered by plea of not guilty. Abe Jesson and his wife H. S. Jesson also set up homestead rights in 200 acres of the Charles Smith survey; and alleged, that one Peter G. Rucker was agent for the plaintiff at Coleman on the 2nd of November, 1885, before and after such date; that Rucker, as such agent, informed Abe Jesson that he, Rucker, could secure for him a loan of $5000 from plaintiff on Jesson's land, including his homestead (the land in suit) by joining with his wife in a conditional sale of the land, including the homestead, taking purchase money notes for the same, having an understanding with the purchaser that he would convey the land back to Mrs. Jesson when the notes were paid; that pursuant to the suggestion of Rucker, on the 2nd day of November, 1885, such sale was made of the 960 acres of land, including the homestead, by Jesson and wife to her father, J. C. Averett, the latter executing and delivering his four vendor's lien notes for $2500 each to Jesson; that at the time of the sale, Averett executed his deed of trust to Coleman, trustee, upon the land, to secure the payment of the notes, which notes and deed of trust were endorsed to plaintiff, and the $5000 loan obtained for Jesson; that the 200 acres of land was the homestead of Jesson and wife, "and that the sale of the same being conditional, was void."

Plaintiff replied by general denial to the special answer of Jesson and wife, and further set up, that on the 2nd of November, 1885, Jesson and

wife, by general warranty deed duly executed by them, sold and conveyed to defendant Averett the land sued for, at the sum of $10,000, secured and to be paid by Averett by his four promissory notes for $2500 each, retaining vendor's lien on the land, due respectively November 2, 1886, 1887, 1888, and 1889, bearing 12 per cent interest per annum, which were furthur secured by Averett's deed of trust on the land; that Averett making default of payment, whereby all the notes by their terms fell due, the land was sold by the trustee to plaintiff, and deed made, which was duly recorded, whereby plaintiff became the owner of the land.

Jesson and wife filed supplemental answer, denying plaintiff's supplemental petition, and set up, that plaintiff had full knowledge of the facts of the transaction of the sale of the land to Averett, was a party to the same, and agreed to accept the notes given to Averett before the transfer of the land to Averett, and that Jesson and wife were in possession of the homestead tract, cultivating and using the same.

The cause was tried on the 4th day of March, 1890, and upon charge of the court to the jury to find for plaintiff, verdict was returned to that effect, and judgment accordingly rendered; from which Jesson and wife have appealed.

Plaintiff introduced in evidence the deed, duly recorded, of Jesson and wife to Averett as alleged.    It expressed a consideration of four notes for $2500 each, retaining vendor's lien, as alleged, by Averett to Jesson.

Also, the deed of trust set up to J. B. Coleman, trustee, duly acknowledged and recorded 12th of December, 1885; deed of trustee pursuant to the trust deed to plaintiff, of date January 18, 1888.

Plaintiff also introduced the four notes described, affidavit of sequestration, bond, writ, and return showing levy on March 4, 1888; replevy bond of Jesson with sureties for $13,000, approved, etc.

Defendants attempted to show that P. G. Rucker was the agent of plaintiff, and acting as such in the sale to Averett and in negotiating the loan; defendants proved that the 200 acres was their homestead, and that Averett was to deed the land back to Jesson's wife when the $5000 borrowed money was paid, and that Rucker knew all the facts.

Rucker's testimony was, that he knew nothing of the fact that Averett was to deed the land to Mrs. Jesson upon payment of the notes by Jesson. There was no proof that plaintiff knew such facts, or knew that Jesson and wife had homestead on the property.

The first assignment of error relied on by appellants:  " The defendants, Abe and H. S. Jesson, assign as error the action of the court in admitting as evidence, over objection of the defendants, the deed from J. B. Coleman, trustee, to the Texas Land and Loan Company, plaintiffs, purporting to convey the lands in controversy in this suit, because there was no evidence or facts shown that prior to the sale by the trustee,

on the 8th day of January, 1888, the trustee had been requested to make said sale, nor was there any evidence offered showing that the trustee, J. B. Coleman, had complied with the terms of the deed of trust; and because there was no evidence showing that the trustee had advertised the land for twenty days in a newspaper published in Coleman County, Texas, as required by the terms of said deed of trust, as is shown by bill of exception number 4."

This assignment can not be sustained, because the deed of trust expressly provided that the recitals in the deed to the purchaser should be full evidence of the truth of the matter therein stated, and that all prerequisites to the sale should be presumed to have been performed; the deed of the trustee to plaintiff stating that it was made pursuant to or in compliance with the deed of trust, and that all prerequisites had been performed necessary to confer authority on the trustee. Jones on Mort., sec. 1895.

Appellants assign as error several rulings of the court in excluding evidence intended by them to establish the alleged fact that Rucker was the agent of plaintiff in negotiating the loan, and as a consequence that plaintiff would be affected with knowledge of all the facts of the transaction, and especially that the homestead of Jesson and wife was hypothecated as security for the loan with the other lands.

It will be convenient to consider these assignments together, as they relate to the same question. The evidence was as follows:

J. W. Herndon would have testified, that in the fall of 1885 he borrowed from the Texas Land and Loan Company $700, and that Rucker represented the company in the transaction. (The court qualified the bill of exceptions to this ruling, because Herndon's testimony had already shown that all he knew about Rucker being such agent was what he had told the witness.)

Witness Brown would have testified, that he borrowed money from the Texas Land and Loan Company in January, 1886, through Rucker; that Rucker transacted all the business pertaining to the negotiation of the loan, preparing the abstract, writing the deed of trust, writing application for the loan, and writing the note of witness to the company, and that Rucker told him that he was such agent. (This evidence was excluded upon the ground that the transaction was after the loan to Jesson. The loan to Jesson was consummated December 24, 1885.)

The court excluded the testimony of Abe Jesson, that Rucker represented the company in negotiating the loan in question, and "Rucker told me that he (Rucker) was the agent of the Texas Land and Loan Company, and acted for and represented the company in the transaction in which I borrowed $5000 from the company; and Rucker told me he could not get $5000 for me on my 760 acres of land, but for me to sell the 760 acres, together with the 200 acres, my homestead, to some third

party, and then he could get me $5000 on the notes given by said other party."

The court excluded the following portions of letters offered by appellant, to prove that Rucker was the agent of the company:

Letter of Rucker to Davis & Sayles, date November 3, 1885: "I have not time this evening to reply to yours of the 2nd from Belton, but will do so to-morrow. What has become of the Clay Mann matter? I wrote your firm several days ago about the abstract, or rather for some explanation, but have no reply. I am also looking for a letter from you in reply to mine from Beaumont. I can not tell you whether I will be able to get off early next week."

Portion of letter from Rucker to Davis & Sayles, date November 6, 1885: "In regard to Mr. Herndon's application, he has concluded to take $700 instead of $500, and as his land is worth at least $1920, I presume you are perfectly willing to make the change. I will send you an abstract of his title, which I have examined and believe to be perfect. In regard to the Hall and wife sale, as I stated, I will send you an abstract of the title. I made a careful examination of the records last Saturday, and found everything clear. I would like to draw on you for the purchase of the Hall note next Monday, with the abstract and note attached, and have the bank take it for collection, to be paid by you if the abstract is satisfactory; if this is not satisfactory, write me on Monday for what amount to draw. Hall is to meet me in Brownwood Monday, and he might back out if I could not do something definite. There is no Sunday mail at Brownwood. I will expect a letter from you by Monday's mail."

Also, all the letter from Davis & Sayles to Peter G. Rucker, dated November 24, 1885:

"*Peter G. Rucker, Esq., Brownwood, Texas:*

"DEAR SIR—Your favor of the 21st is received, enclosing exhibit, C. C. McAdan. We will loan $400 on the notes as collaterals. We are looking for some large applications from you.

"Yours truly,

"DAVIS & SAYLES."

Letter from Davis & Sayles to Rucker, date December 1, 1885: "In the Love matter, you wrote us from Runnels, that the land sold by Love to Thomas is being improved, etc. This is the first reference we have had to the Love matter; afterwards you sent us a deed from Thomas to Wright. This is all we have in the Love matter, and have never received any application or abstract of title. Did you ever send application and abstract? In response to the Lee Rucker note, we have to say, the rules of the company require an abstract of title and opinion of a reliable lawyer as to title, and while the writer feels certain that the note is all right, we could not buy the note without this. When the writer goes to Bren-

ham he will make examination free of charge to you; or if you will get H. Lewis to make an abstract, we will accept this, as we are anxious to accommodate you. For the present we return you the note."

Part of letter from Rucker to Davis & Sayles, dated December 18, 1885: "In re Lucian Love, I sent you an abstract of his title, from Coleman, and Mr. Davis spoke of it being in hand while you were in Lampasas, and it must have been mislaid in your office. Mr. L. wanted to borrow $400 on some notes mentioned in the last transfer in his abstract. If you don't find the abstracts, and Mr. Love still wants the money, I will send you another abstract of his title next week. In re Lee Rucker note, your favor of the 8th enclosing New York exchange $359.55 received by due course of mail and was entirely satisfactory to me. In re blank agreement sent me on the 8th, I presume you do not insist on the insurance clause where the land, without reference to the value of the improvements, is worth double the amount of your loan. If you insist, advise me in your next letter. In regard to 11 per cent money, I think I will have an application from Comanche County next week for a loan of from $10,000 to $15,000 for five years, provided you want it at 11 per cent. He knows he can get it at that from Simpkins, at Dallas, at that per cent, and will not give more. Shall I take his application for you, provided it is not less than $10,000? I will send you one good application this week for $5000 on five years. Also several small ones, and hope to get two or three more by next Monday."

The objection to these letters assigns no reason for their exclusion.

It should be explained in this connection, that Davis & Sayles were partners in law in Galveston. Davis was the general manager of the company; had power to solicit business for the company, to investigate and report to finance committee on application for loans, purchase and sale of lands, to assist the real estate and finance committee, to supervise correspondence of secretary, advise and assist him, look after company's papers and books, keep its land registry, pay taxes, report to the directory in all matters submitted to him, and to do all in his power to attain the objects for which the company was created; but had no power to finally determine any purchase, sale, or loan without the award of the committee.

Henry Sayles acted for him, made reports to the finance committee, and was recognized by the company in the same capacity and performance of the duties of Davis, the general manager.

The foregoing letters were attached as exhibits to the depositions of Davis used by defendants in this case. Many other letters in the correspondence between Davis & Sayles and Rucker in reference to the loan to Jesson were admitted in evidence; for example, Rucker's letter to Henry Sayles, dated October 30, 1885, forwarding Jesson's application for the loan of $5000 on the 960 acres of land, with abstract of title, plat, stating that Jesson had sold to Averett, "which he will close, provided

he can raise $5000 on the notes;" requesting, "if you are willing to make the loan provided his title is made satisfactory, wire me at Belton, and write particulars as to when the loan can be closed and what you wish done."

Reply of Sayles to the foregoing, dated November 3, 1885, pointing out defect in the title, saying that "if the titles are made perfect, we will loan $5000 on the land or the purchase money notes." Sayles had pointed out an error in an acknowledgment, and some of the land being school land, had not been fully paid for; but in this correspondence it appears that the State was fully paid and final receipt of the Commissioner of the General Land Office obtained, which was forwarded to Davis & Sayles by Rucker with his "final certificate of examination," which they were directed to attach to the Jesson abstract then in their hands. This letter is dated December 16, 1885.

Along in the fall of 1886, Rucker wrote some other letters to the company's general manager, asking extension for Jesson on the note and interest due, forwarding Jesson's letter to him (Rucker), which stated that he had failed to raise the money, and asking Rucker to write the company for him.

The manager replied to Rucker, enclosing letters to Jesson and Averett as to terms of delay, etc. Rucker replied, saying Averett and Jesson would make the necessary guaranty demanded, and hoped it would be accepted. Negotiations for extension failed, and the land was sold to plaintiff.

There was testimony of Rucker and Coleman (the trustee), that Rucker was a land and loan broker, and had customers in his business, and that he would procure loans for them by preparing papers, making applications, and forwarding to an agency able to furnish the money, and the testimony tended to show that this was his relation to the plaintiff, and that Jesson was such a customer of Rucker's.

Jesson's testimony denied that Rucker was his agent to procure the loan, and denied that he had paid Rucker for his services.

Rucker testified that he acted for Jesson in procuring the loan, and that Jesson paid him $310 for his services.

The banker, Coleman, by whom Jesson's draft on Davis & Sayers was collected for the $5000, testified that he paid out of the amount after it was collected and put to Jesson's credit, on Jesson's checks to Rucker, $300 at one time and $10 at another time, "for working up the loan."

The fact proposed to be proved by the defendants was that Rucker was the agent of plaintiff—that he was acting for plaintiff by its authority.

The question is not that he was such agent by estoppel, as defendants are not in a position to claim that they have been wronged by the acts of plaintiff inducing them to believe he was such agent. They rely upon their legal rights that the homestead can not be made the subject of debt

by any kind of subterfuge or evasion, and that the facts of such attempted evasion in this case were known to plaintiff or its legally authorized agent. They were in nowise deceived. If plaintiff had no notice of the attempted evasion of the law through its agent, it could rely upon the deed and securities offered to secure the loan. Hurt v. Cooper, 63 Texas, 362, et seq.

An agency may be established by circumstances, as any other fact where it is not required to be in writing. It can only exist by the consent of both principal and agent, but this consent may be inferred from facts showing that it is recognized and acted on by both parties. It can not be shown by the declarations or admissions of the person presuming to act as agent, nor can an agent with authority to act in a particular manner extend his authority by his own declarations. Mech. on Ag., sec. 100; Railway v. Jones, 82 Texas, 156.

The declarations of an agent generally can not be admitted to bind his principal until the agency is established; but when the agency is in parol and disputed, all the questions may be submitted to the jury together.

Where there is evidence tending to establish an agency, and the fact is in dispute, and parol evidence is relied on to establish it, it is for the jury to determine from all the evidence whether it exists or not. Any evidence pertinent to the question should be admitted. Mech. on Ag., sec. 106.

Suppose in this case there had been no evidence adduced by plaintiff on this question, could it be said that there was no evidence in the case and none tendered by defendants to prove the fact of Rucker's agency for plaintiff? We think not. It may be true, that the evidence in rebuttal by plaintiff is of a very convincing character, that it reconciles all the facts with the assumption that Rucker was not the agent of plaintiff, and is consistent throughout with that assumption, and that such should be the conclusion; still it may be asked, who must determine the question—the jury or the court? Evidently the jury. If the facts are undisputed, or the supposed power is in writing, ordinarily the court should construe them, but not where the facts are disputed.

We think the correspondence of Rucker with Davis & Sayles was admissible upon the question of agency, as well as every act done by Rucker, with their consent, tending to show that he was acting by their authority in this transaction or other transactions in connection with loans by plaintiff. Such evidence may be fully answered by other evidence on behalf of plaintiff; but the jury must be trusted to decide the question. The court's power over the question after the verdict is deemed sufficient to prevent injustice in any case. The court can not control the case by rejecting testimony that tends to make a prima facie case by parol.

There was error in charging the jury to find for plaintiff. The court may have correctly concluded that the evidence was slight, and that the

verdict should have been for plaintiff, or that a new trial should be ordered· in case of a verdict for defendants, questions which we do not. decide; yet he should not have invaded the province of the jury in passing upon the facts. Where there is no evidence except that which establishes a given fact, it is proper to instruct the jury to find the fact. Supreme Council v. Anderson, 61 Texas, 296.

But where there is evidence to support a different conclusion, such a charge would be improper. Hart v. Fitzgerald, 17 S. W. Rep., 369.

It is our opinion that the judgment of the lower court should be reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 8, 1893.

Motion for rehearing refused.