SUE ALICE SLAUGHTER ET VIR V. H. B. QUALLS.

No. 7872. Decided May 13, 1942.
Rehearing overruled June 24, 1942.
(162 S. W., 2d Series, 671.)

*Robert Howard, Geo. S. Berry, Bradley & Wilson,* all of Lubbock, and *Kilgore & Rogers,* of Wichita Falls, for plaintiffs in error.

It was error for the Court of Civil Appeals not to hold that all the facts in the record showed that Sue Alice Slaughter in conveying the title to others intended to rescind the executory contract of Qualls to buy the land. Avery & Sons v. Texas Loan Agency, 62 S. W. 793; Thompson v. Robinson, 93 Texas 165, 53 S. W. 243; Roth v. Connor, 25 S. W. (2d) 246.

*Carl Ratliff,* of Levelland, *W. R. Porter,* of Camp Wolters, *Nelson & Brown* and *Geo. W. McClesky,* of Lubbock, for defendants in error—Respondents.

Respondent, Qualls, not being in default on the date of the deeds from relators to other parties, a rescission of respondent's executory contract cannot be predicated upon such conveyance. Investor's Syndicate v. Mayfield, 96 S. W. (2d) 247; 43 Tex. Jur. 367, 368, 378, 379.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This is a suit in the nature of trespass to try title brought by the vendee of the land against the holder of a purchase money note who had attempted to foreclose a deed of trust lien given to secure such note. The controlling questions are: (1) Whether the trustee's deed, regular on its face, is absolutely void and may be attacked in this kind of suit by parol testimony of irregularities in the foreclosure sale at a time when a direct suit to cancel the deed is barred by the four year statute of limitation, Art. 5529, R. C. S. 1925, and (2) if the trustee's deed is void, whether the holder of the notes thereafter lawfully rescinded the executory contract of sale and thereby cut off the vendee's rights in the land.

On January 6, 1928, Bob Slaughter conveyed to plaintiff, H. B. Qualls, the land in controversy, and received six notes as part of the consideration therefor. The first five notes were payable out of the proceeds of one-third of the cotton to be raised on the land, and the sixth note, in the sum of $482.92, bearing 7% interest payable annually, and providing for acceleration of maturity on default in payment of the interest, was due ten years after date. A vendor's lien was retained in

the deed to secure the payment of the entire series of notes and, in addition, a deed of trust was given on the land to secure the payment of the sixth note. R. L. Slaughter, Jr., was named as trustee therein. On the 6th of May, 1931, Bob Slaughter assigned the $489.92 note to R. L. Slaughter, Jr., and on the 21st of January, 1932, R. L. Slaughter, Jr., assigned it to his wife, Sue Alice Slaughter. The superior legal title of the vendor was also duly transferred to the holder of the note. On October 28, 1933, R. L. Slaughter, Jr., executed and acknowledged an instrument in which he resigned as trustee, stating in the resignation that he was unable to act in such capacity and that he thereby refused to do so. A few days later Sue Alice Slaughter, joined by her husband, R. L. Slaughter, Jr., by written instrument, appointed A. J. Richards as substitute trustee and, upon request of Sue Alice Slaughter, said substitute trustee advertised the land for sale at the courthouse door on the 5th of December, 1933. At this sale Sue Alice Slaughter became the purchaser and A. J. Richards, the substitute trustee, executed and delivered to her a trustee's deed, in regular form, in which he purported to convey the land to her.

On December 8, 1933, three days after the sale, the Slaughters conveyed the land to J. L. Stowers and as part of the consideration Stowers executed ten notes in the sum of $195.96 each, due one to ten years, respectively, and on the 1st of August, 1934, Stowers procured a loan from A. S. Goss, Federal Land Bank Commissioner, in the sum of $2,700.00 to take up the original indebtedness on the land which Mrs. Slaughter owed and Stowers assumed, and also the balance due on the notes given by Stowers to Mrs. Slaughter. On November 21, 1934, Stowers conveyed the land back to Mrs. Slaughter and as part of the consideration therefor Mrs. Slaughter assumed the payment of the $2,700.00 note which Stowers had executed to the Land Bank Commissioner. On the 1st of April, 1935, Mrs. Slaughter and her husband conveyed the land to A. E. Coe, who likewise assumed the $2,700.00 note held by the Land Bank Commissioner, and on the 10th of April, 1937, Coe reconveyed it to Mrs. Slaughter. The Slaughters also executed an oil and gas lease and conveyed certain other mineral interests, which are now outstanding.

On September 8, 1938, more than four years after the execution and recording of the trustee's deed from Richards, the substitute trustee, to Mrs. Slaughter, Qualls filed this suit

against the Slaughters and the owners of the mineral interests and the holders of the liens given subsequent to the trustee's deed. In addition to the ordinary allegations in trespass to try title he pleaded specially the grounds upon which he sought to recover the land, particularly certain irregularities in connection with the trustee's sale. He prayed judgment for title and possession of the land and that the trustee's deed and all subsequent instruments be decreed void and removed as clouds on his title.

At the trial there was evidence tending to show, and the jury found, that A. J. Richards, the substitute trustee, did not himself personally conduct the sale, but that it was conducted at his request by one Douglas Witherspoon, who cried off the sale, received and accepted the bid, and declared the property sold to Mrs. Slaughter. The jury also found that at the time of the sale there was no default by Qualls in payment of the principal or interest on the sixth note, which was secured by the deed of trust. It is not contended that this finding is unsupported by the evidence. Based on this verdict, the trial court rendered judgment, awarding to plaintiff Qualls the title and possession of the land as against all the defendants. On appeal the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of the mineral owners and lessees and the holders of the liens, holding that they were entitled to protection as bona fide purchasers, but affirmed the judgment as against the Slaughters on the ground that the trustee's deed was void and passed no title out of Qualls; hence, the four year statute of limitation was no bar to Qualls' suit to recover the land. 149 S. W. (2d) 651.

Qualls has not appealed from the judgment of the Court of Civil Appeals holding that he could not recover as against those who had acquired liens on and mineral interests in the land in good faith, subsequent to the trustee's sale. Consequently, we are not here concerned with the rights of such parties.

Admittedly, there is nothing on the face of the trustee's deed that would render it void. The deed of trust contained the usual provisions authorizing the trustee, or a duly appointed substitute trustee, to recite in the trustee's deed the facts concerning the sale, and that such recitals should be prima facie evidence of the truth of the facts so recited. The substitute

trustee's deed contained all recitals necessary to show a valid sale by him.

■ The rule has long been establishhed in this State that where a deed is absolutely void, a suit at law in trespass to try title may be maintained to recover the land without setting the deed aside, and the statutes of limitation governing actions for the recovery of land apply. On the other hand, where a deed is merely voidable and the equity powers of the court must first be invoked to cancel the deed before a suit can be maintained at law to recover the land, then the four year statute, Art. 5529, R. C. S. 1925, controls. McCampbell v. Durst, 15 Texas Civ. App. 522, 40 S. W. 315; Carl v. Settegast (Com. App.), 237 S. W. 238; Commercial Nat. Bank v. Wheelock, 52 Ohio St. 534, 40 N. E. 636, 49 Am. St. Rep. 738; 28 Tex. Jur. 107. Therefore, it is necessary for us to decide whether the trustee's deed was void or merely voidable in order to determine whether or not the suit was barred by limitation.

■ The question whether the trustee's deed is void or voidable depends on its effect upon the title at the time it was executed and delivered. If it were a mere nullity, passing no title and conferring no rights whatsoever, it was absolutely void, but if it passed title to Mrs. Slaughter, the purchaser, subject only to the right of Qualls to have it set aside upon proof that the sale was improperly made, then it was merely voidable. This was the distinction made by the Commission of Appeals in Smith v. Thornhill, 25 S. W. (2d) 597:

"That which is void is without vitality or legal effect. That which is voidable operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared." See also Cummings v. Powell, 8 Texas 80, 85; Williams v. Sapieha, 94 Texas 430, 61 S. W. 115; Chapman v. Guaranty State Bank (Com. App.), 267 S. W. 690; Cain v. Fry (Civ. App.), 86 S. W. (2d) 270; Jones v. Comer (W. Va.), 13 S. E. (2d) 578; Hone v. Woolsey, 2 Edw. Ch. (N. Y.) 289; State v. Richmond, 26 N. H. (6 Foster), 232, 237; Kanamu v. Parke, 6 Hawaii 91, 94; 44 Words and Phrases, Perm. Ed., 319 et seq.

■ The contention is made that since the trustee's deed was regular on its face and apparently conferred good title on the purchaser, and it was necessary for the plaintiff Qualls to go ·

behind the deed and show the invalidity of the sale by parol testimony, the deed was merely voidable. We are not in accord with this view. It cannot be laid down as a general proposition that whenever a conveyance is regular on its face it operates to pass title between the parties at the time of its execution. For instance, a deed may be regular on its face and yet be void and ineffectual to pass any title to the grantee where the grantee has obtained possession of the deed by fraud without any delivery by the grantor, or where the grantor had no capacity to execute it. 14 Tex. Jur. 890. The same is true where a deed is intended as a mortgage on a homestead. Moore v. Chamberlain, 109 Texas 64, 195 S. W. 1135. A case more nearly in point is Wall v. Lubbock (Civ. App.), 118 S. W. 886, syl. 6 (writ refused), wherein it was held that a deed executed by an attorney in fact after the death of his principal conveyed no title, and that bona fide purchasers could base no rights thereon.

■ In the present case the jury found that the mortgagor was not in default in payment of the annual interest on the note and that the substitute trustee did not personally conduct the sale. A trustee has no power to sell the debtor's property, except such as may be found in the deed of trust; and the powers therein conferred must be strictly followed. Michael v. Crawford, 108 Texas 352, 193 S. W. 1070; Bemis v. Williams, 32 Texas Civ. App. 393, 74 S. W. 332; Smith v. Allbright (Civ. App.), 279 S. W. 852; 29 Tex. Jur. 975. The deed of trust authorized the sale only upon default by the debtor. Until that event happened there was no authority for sale. After default only the trustee, or a duly substitute trustee, could sell the property. A sale by a third party was wholly unauthorized. Fuller v. O'Neil, 69 Texas 49, 6 S. W. 181, 5 Am. St. Rep. 59; Estelle v. Hart (Com. App.), 55 S. W. (2d) 510. We are of the opinion that since the conditions and limitations on the trustee's power to convey the land were never fulfilled, such power never came into being, and, therefore, the foreclosure sale and trustee's deed were absolutely void. In the case of Schneider v. Sellers, 98 Texas 380, 389, 84 S. W. 417, 421, the land had been released from the deed of trust lien prior to the purported sale by the trustee. The court there said:

"The release of the land from the lien of the deed of trust terminated the power of the trustee to sell the same, and the subsequent sale which was made by the trustee for the benefit of Schneider & Davis was void and conferred no title upon

Schneider & Davis, but the deed of trust and the sale conferred upon Schneider & Davis the apparent title to the land, whereby they were enabled to convey to the Schneider-Davis Company, a bona fide purchaser for value, the legal title to the land, which constituted a good defense against the action of the plaintiffs below for the recovery of the land."

In the case of Smith v. Allbright, 279 S. W. 852, the Court of Civil Appeal held that a sale by a trustee was void and subject to collateral attack where the terms of deed of trust were not complied with. While the judgment of the Court of Civil Appeals was reversed by the Supreme Court on other grounds, the Supreme Court expressly approved the holding of the Court of Civil Appeals to the effect that the sale was subject to collateral attack. 5 S. W. (2d) 970.

■ It is true that under circumstances such as we have here, those who purchased interests in or took liens on the land in good faith from Mrs. Slaughter after the purported sale to her by the substitute trustee acquired good title as against Qualls; but this is so not on the theory that the title actually passed, but rather on the theory that Qualls, by the execution of the deed of trust, made it possible for the trustee to create the appearance of good title in Mrs. Slaughter, and it would be inequitable to permit Qualls now to show otherwise as against those who have purchased in good faith in reliance thereon. Burnham v. Hardy Oil Co., 108 Texas 555, 195 S. W. 1139, par. 4; Patty v. Middleton, 82 Texas 586, 17 S. W. 909; Hill v. Moore, 62 Texas 610; Edwards v. Brown, 68 Texas 329, 4 S. W. 380. Consequently, we hold that the plaintiff Qualls could prove the invalidity of the sale in a straight suit to recover the land, and that his cause of action is not barred by limitation. Wilson v. Armstrong (Civ. App.), 236 S. W. 755; Bowman v. Oakley (Civ. App.), 212 S. W. 549 (writ refused); Bracken v. Bounds, 96 Texas 200, 71 S. W. 547; Rutherford v. Carr, 99 Texas 101, 87 S. W. 815.

■ We recognize the rule that where, as in this case, the mortgagor, by signing the deed of trust, authorizes the trustee named, or the duly appointed substitute trustee, to recite in the trustee's deed the facts concerning the sale and provides that such recitals shall be prima facie evidence of their truthfulness, such recitals are admissible in evidence to prove the facts recited. Adams v. Zellner, 107 Texas 653, 183 S. W. 1143;

Southland Lumber Co. v. Boyd (Com. App.), 244 S. W. 119; Jesson v. Texas Land & Loan Co. (Civ. App.), 21 S. W. 624; Kelley v. Goode (Civ. App.), 1 S. W. (2d) 683. However, such recitals only give rise to a presumption of validity, and relate only to matters of evidence. A deed may be presumptively valid, and yet be utterly void as a conveyance, as may appear when, as in this case, the presumption is rebutted.

Mrs. Slaughter, as the holder of the vendor's lien and the superior title, had a right to rescind the sale and take possession of the land, or to convey it to a third party, in the event of a default by Qualls. It is contended that although the trustee's sale was void, Mrs. Slaughter's subsequent conduct amounted to such a rescission, thus cutting off Qualls' interest in the property. It should be noted, however, that there had been no default by Qualls on December 5, 1933, at the time Mrs. Slaughter attempted to have the land sold under the deed of trust, and she had no authority to rescind at that time. Likewise, there had been no default on December 8, 1933, at the time she conveyed the land to Stowers. We say this because the jury found that Qualls was not in default on December 5, 1933, and the evidence shows that neither the note nor any installment of interest thereon matured thereafter on or before the 8th of December, 1933. Consequently, it cannot be said that Mrs. Slaughter rescinded the sale to Qualls at that time.

■ Neither do we think that any subsequent default by **Qualls** in payment of the principal or interest on the note gave Mrs. Slaughter the right to rescind. The vendor's lien note held by Mrs. Slaughter against Qualls did not mature until January 6, 1938, shortly before this suit was filed. The jury found that Mrs. Slaughter never declared the indebtedness due on account of the failure of Qualls to pay the annual interest. But be this as it may, it is certainly true that if Qualls defaulted at any time after the purported sale by the substitute trustee, and prior to the maturity date of this note, it was only because of his failure to pay the annual interest installments. During this time, however, Mrs. Slaughter had not only asserted a right to enforce the contract by having the property sold under the powers given in the deed of trust in satisfaction of the debt—thus evidencing an intention to rely on the contract—but, in addition, by virtue of the apparent title thus vested in her by the trustee's deed had conveyed the property to Stowers, a good

faith purchaser, so that Qualls could not have recovered the land if he had finished paying for it. While Stowers thus held the land as a good faith purchaser he obtained a loan on it for the sum of $2,700.00 from the Federal Land Bank Commissioner. Stowers reconveyed the land, encumbered with the new loan, to Mrs. Slaughter on November 21, 1934, and she conveyed it to Coe, another good faith purchaser, on April 1, 1935. Coe reconveyed the land to Mrs. Slaughter on April 10, 1937. It is thus apparent that at no time after the unlawful sale by the trustee could Qualls have acquired good title to the land if he had continued to keep up his payments of the annually maturing interest. The question is: Would equity permit Mrs. Slaughter to declare a forfeiture and to rescind the contract because of Qualls' failure to pay his annual interest after Mrs. Slaughter had thus unlawfully attempted to enforce the contract by a sale under the deed of trust, and at a time when she had made it impossible for her to perform her part of the contract? We think not. In Milligan v. Ewing, 64 Texas 258, 260, it is said:

"It is ordinarily true that a vendor who has made an executory contract to convey land may rescind the contract if the vendee fails to pay the purchase money. This right, however, does not exist in all cases; for if there be facts which make it inequitable for the vendor to exercise this right, a court of equity will not enforce it, but will leave the party to his action for the purchase money."

Mrs. Slaughter was the first to put herself in the wrong by placing the title beyond her own reach. It was hardly to be expected that the vendee would continue to meet his interest payments at a time when it would have been of no avail for him to do so. Having first made it impossible for her to perform her part of the contract, Mrs. Slaughter is in no position to invoke the harsh remedy of rescission against her vendee merely because of his failure to continue to meet his payments after she had thus defaulted. In the case of Austin v. Ewell, 25 Texas. Supp. 404, 407, the contract of sale inadvertently failed to include certain improvements intended by the parties to be included therein. After discovering the defect the vendee refused to make further payment until an adjustment was made. The vendor sought to rescind the trade. The court there said:

"These facts, taken together, do not present a case in which the vendor of land is permitted to put an end to the contract of sale, to retain the part of the price which has been paid, and to resell the land. The case here presented is one in which the vendor is the party who first places himself in the wrong." See also More v. Giesecke, 76 Texas 543, 13 S. W. 290, and 43 Tex. Jur. 359.

In this connection, we note that Mrs. Slaughter here contends that there was a rescission by implied agreement, or, at least, an acquiescence by Qualls in the attempted rescission by Mrs. Slaughter. This acquiescence is based on the fact that Qualls, who lived in Oklahoma at the time of the purported sale, ceased paying the taxes and annual installments of interest, and made no affirmative objection to Mrs. Slaughter's acts in taking possession of the property and selling it to third parties. However, there is not only an absence of any finding by the jury to support Mrs. Slaughter's contentions in this respect, but there is an express finding that Qualls did not by his conduct cause Mrs. Slaughter, or the other defendants, to believe that he had no objection to the irregularity of the trustee's sale. Mrs. Slaughter did not allege an implied agreement to rescind, nor did the jury make any finding thereon, and we cannot say as a matter of law that Qualls' neglect of the property had continued so long as to amount to an implied agreement to rescind or an acquiescence by him in the attempted rescission by Mrs. Slaughter.

Mrs. Slaughter is in no position to complain of the judgment of the Court of Civil Appeals in so far as it permits Qualls to redeem the land from her upon the payment of the balance of the unpaid purchase money.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered May 13, 1942.

Rehearing overruled June 24, 1942.