**AMERICAN SAVINGS & LOAN ASSOCIATION OF HOUSTON, Appellant,**

v.

**Mary Ann MUSICK, Individually and as Administratrix of the Estate of LeVoy Musick, Deceased, et al., Appellees.**

**No. 971.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Dec. 11, 1974.

Rehearing Denied Jan. 8, 1975.

Nelson Jones, Anderson, Brown, Orn & Jones, Ralph B. Lee, Dermot Rigg, Charles B. Wolfe, Lee, Brown, Moss & Wylie, Houston, for appellant.

Joe G. Roady, Marcel F. Gremillion, Cox, Pakenham & Roady, C. B. Stephenson, Jr., Meyer Jacobson, Houston, for appellees.

CURTISS BROWN, Justice.

This is a trespass to try title case.

American Savings & Loan Association (American Savings) brought this suit for the title to three tracts of land against Mary Ann Musick, individually and as administratrix of the estate of her husband, Levoy Musick, deceased, and others (the Musick parties). At the close of all the evidence, the trial court withdrew the case from the jury and rendered judgment awarding title to one tract, 618.7 acres, to American Savings and title to the other two tracts, 41.4305 acres and 16.6 acres, to the Musick parties. Both American Savings and the Musick parties have appealed.

During his lifetime Levoy Musick was the sole shareholder of T.W.I. Development Company (T.W.I.), a Texas corporation. T.W.I. owned the two tracts of 618.7 acres and 16.6 acres. Levoy Musick owned the third tract of 41.4305 acres in his own name. In 1964 Musick and T.W.I. conveyed these three tracts to Harry Holmes, Jr., and W. H. Wheless, Sr., with an option to repurchase. Levoy Musick died shortly thereafter and his wife Mary Ann Musick became the owner of the T.W.I. stock, as well as of the repurchase options. She decided to exercise the options and arranged a financing plan with T. S. Kent and Meyer Jacobson to raise the necessary money.

In accordance with this plan, on December 18, 1964, Mary Ann Musick, as president of T.W.I., conveyed to Kent and Jacobson by general warranty deed the following property:

618.7 acres of land, more or less, out of the WILLIAM WHITE SURVEY, Abstract No. 829, Harris County, Texas, *more particularly described by metes and bounds in deed of trust of even date herewith* from T. S. Kent and Meyer Jacobson to Ralph B. Lee, Trustee, recorded in the office of the County Clerk of Harris County, Texas.

Mrs. Musick testified that this conveyance was made solely for Kent and Jacobson to acquire a loan to exercise the options. She further stated that it was her intention to convey *only* the 618.7 acre tract and that she understood she would retain the other tracts free and clear. On that same day Kent and Jacobson executed a deed of trust to Ralph B. Lee, Trustee, for American Savings. As recorded, the deed of trust conveyed all three tracts, setting out acreage and metes and bounds descriptions for each. The deed of trust secured a note for $150,000. The note recited that its payment was secured by the deed of trust, described above, covering 676.7305 acres of land. It is obvious that the figure "676.7305" was written over the erasure of what seems to have been "618.7." None of the note payments were made, and in February 1966 American Savings purchased the three tracts at a trustee's sale for $25,000.

 The Musick parties' first claim on appeal is that American Savings failed to prove title from the sovereign or by superior title from a common source. These are two of the methods by which title can be established, in addition to limitation title and by prior possession that has not been abandoned. *See* Land v. Turner, 377 S. W.2d 181 (Tex.Sup.1964). It is a well-established principle, however, that when a plaintiff in trespass to try title claims under a deed from the defendant, the defend-

ant serves as the common grantor. The plaintiff does not have to prove title in the defendant at the time of the deed, and the defendant is estopped to deny it. Richardson v. Pavell, 83 Tex. 588, 19 S.W. 262 (1892). As to the 618.7 acres and 16.6 acres, American Savings introduced the deed from T.W.I. to Kent and Jacobson, the deed of trust, and the trustee's deed. As to the 41.4305 acres, the doctrine of estoppel by deed could have served to pass the title of Mary Ann Musick individually in the T.W.I. deed which she signed as president. Carothers v. Alexander, 74 Tex. 309, 12 S.W. 4, 12 (1889). Nevertheless, the T.W.I. deed was not sufficient to prove a chain of title from the defendants as to the 16.6 acre and 41.4305 acre tracts. American Savings argues that the metes and bounds description in the deed of trust was incorporated by reference in the T.W.I. deed. Since a metes and bounds description prevails over an inconsistent call for acreage, American Savings contends that the T.W.I. deed passes title to all tracts in the deed of trust which are owned by the grantors and fall within the general description in the deed, i. e. being out of the William White Survey, Abstract No. 829, Harris County, Texas. Although the premise is correct and well-supported by numerous authorities, it has no application to this case. The T.W.I. deed conveys 618.7 acres of land more particularly described by metes and bounds in the deed of trust. The deed of trust contains a metes and bounds description of the 618.7 acre tract. There is no inconsistency. The other two tracts in the deed of trust were not incorporated in the T.W.I. deed and were not conveyed thereby. Contrary to American Savings' reasoning, this is not a case in which a deed refers to a tract as being "all the land" conveyed in another instrument. Neither is it one in which the metes and bounds description contains a different amount of land than is indicated by the call for acreage. When one instrument conveying real property refers to a second instrument for a more particular description of the tract conveyed

and that description is consistent with the land conveyed in the first, the presence of additional tracts in the second instrument does not effect the amount of property granted in the first. *See* Winters v. Slover, 151 Tex. 485, 251 S.W.2d 726 (1952). American Savings failed to establish a claim of title to the 16.6 acre and 41.4305 acre tracts. The judgment of the trial court giving title to the Musick parties was therefore correct.

■ The Musick parties next claim that American Savings failed to prove the authority for the foreclosure sale. The powers conferred upon a trustee in a deed of trust must be strictly followed. Slaughter v. Qualls, 139 Tex. 340, 162 S.W.2d 671 (1942). The deed of trust creates a true fiduciary relationship between the grantor and trustee, and the trustee may not delegate his duties without strict compliance with the express terms of the trust. Fuller v. O'Neal, 69 Tex. 349, 6 S.W. 181 (1887); Hart v. McClusky, 118 S.W.2d 1077 (Tex. Civ.App.—Amarillo 1938, writ ref'd). A sale made without such compliance is void and passes no title. Slaughter v. Qualls, *supra*.

■ A deed of trust can authorize the trustee or a duly authorized substitute trustee to recite the facts of a sale in a trustee's deed. This recital is prima facie evidence of the facts stated and gives rise to a presumption of validity of the sale. This is only an evidentiary presumption, however, and the deed can be voided by a rebuttal of the presumption. Tarrant Savings Association v. Lucky Homes, Inc., 390 S.W.2d 473 (Tex.Sup.1965); Burrow v. McMahan, 384 S.W.2d 124 (Tex.Sup. 1964); Hart v. Eason, 159 Tex. 375, 321 S.W.2d 574 (1959); Slaughter v. Qualls, *supra*; Terry v. Teachworth, 431 S.W.2d 918 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

■ The deed of trust in this case provides in part:

In the case of the absence, death, inability, refusal, or failure of the Trustee herein named to act, a successor and substitute may be named, . . .

It also provides:

[I]t shall . . . be the duty of the Trustee, and of his successor or substitute, . . ., on the request of the Association [American Savings] (which request is hereby presumed), to enforce this Trust; . . . .

Ralph B. Lee was named as trustee in the deed of trust. Mr. Lee was the president and dominant stockholder of American Savings. There is in evidence a written instrument signed by Mr. Lee, Trustee, reciting that American "has requested" said Trustee to make sale of the property and "that I, the said Ralph B. Lee do hereby decline to act as Trustee." The instrument appointing Andrew D. DeFiore substitute trustee, executed by the Executive Vice-President of American, Joel H. Berry, Jr., recites that Lee "has resigned and/or refused" to act as said trustee. These provisions in the deed of trust and the recitations in the instruments set out above created a presumption of the validity of the appointment of the subsitute trustee and the sale he thereafter conducted.

The Musick parties contend, however, that under the authorities cited above that this presumption was rebutted by the clear, direct, uncontested testimony of Mr. Lee that no demand or request was made upon him personally to enforce the trust. He testified that, as a matter of course, a request to collect a debt in default would have been sent to his law firm by American Savings. As a matter of policy established by him, one of his associates would then prepare the papers to appoint himself substitute trustee, because Lee never acted as trustee in enforcing a deed of trust.

It is clear, as the Musick parties contend, that the substitute trustee could not have been appointed here because of "absence, death, inability, or refusal" because

Mr. Lee had not been requested to act. However, we cannot say as a matter of law that the practices and procedures established between the association, Lee, and his law firm did not amount to a "failure of the trustee herein named to act." A question of fact as to whether the presumption created by the instruments were rebutted by Mr. Lee's testimony may have been presented. Perry v. Teachworth, 431 S.W.2d 918 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). However, the Musick parties make no such assignment. They only claim that, as a matter of law, American's title has failed under the undisputed testimony. Wilson v. Armstrong, 236 S.W. 755 at page 758 (Tex. Civ.App.—Beaumont 1921, no writ). It is not necessary for us to consider whether (if the substitute trustee's sale is proven void) American is entitled to be treated as a mortgagee in possession or with other enforceable rights. See City Nat. Bank of Houston v. Moody, 115 S.W.2d 745, 748 (Tex.Civ.App.—Galveston 1938, writ dism'd). While holding that the evidence here does not compel, as a matter of law, the finding that the substitute trustee sale was void under Bracken v. Bounds, 96 Tex. 200, 71 S.W. 547 (1903), it may be that such irregularity combined with inadequate consideration will afford the basis for an attack under Cline v. Cline, 323 S. W.2d 276 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.).

In view of the fact that a new trial will be required with respect to the 618.7 acre tract on other grounds, we should mention American Savings' contentions with respect to the foreclosure sale that may be an issue upon another trial.

■ American Savings has raised several points in defense of the foreclosure sale. First, American Savings claims that the Musick parties have no standing to challenge a trustee's sale under a deed of trust to which they were not parties, citing Estelle v. Hart, 55 S.W.2d 510 (Tex. Comm'n App.1932, jdgmt adopted). We do not agree with American Savings' interpretation of that case. In that case, junior lienholders attempted to attack the validity of a foreclosure sale conducted under a deed of trust securing the senior lien. The senior lienholder claimed that only the mortgagor and his privies in estate could question the exercise of a power of sale given by the mortagor. In response, the court stated, at 513:

> The bank contends, however, that an inquiry as to the proper exercise of a power of sale which has been granted by a mortgagor is not available to any one except the mortgagor and his privies in estate. The case of Buvens v. Brown, 118 Tex. 551, 18 S.W.2d 1057, is relied on as sustaining this contention on principle. This may be true, perhaps, so far as the inquiry relates to divestiture of the title of the mortgagor and the investing of same in the purchaser at such a sale. But a sale of the mortgaged property under such a power, if the power be regularly exercised in conformity with the terms prescribed, imports something more than a mere transfer of the title to the property. It also has effect to cut off all the rights of junior lienholders respecting the property sold. . . . It is perfectly plain, therefore, that a junior lienholder has an interest in the subject-matter of such a sale to the extent, at least of his rights in the property sold, and, to say the least, is entitled to show the improper exercise of the power of sale, and thus show the invalidity of the sale to cut off his rights.

Privity exists here. The deed from T.W.I. is relied upon by American Savings to establish a common source or common grantor. This deed, along with the deed of trust and the sale conducted thereunder, constitutes the basis for American Savings' claim. There is sufficient privity to give T.W.I. the standing to challenge the sale. No rights of innocent third parties have intervened and title by limitations has not been claimed in this case. We further interpret the language of Estelle v. Hart, *su-*

*pra,* to mean that third parties have standing to challenge such a sale if their rights are effected thereby. This is especially true when, as here, the sale is an essential link in the plaintiff's case and the Musick parties raised the challenge to the sale as a defense in the trespass to try title suit.

■ Second, American Savings cites Mitchell v. McClung, 93 S.W.2d 458 (Tex. Civ.App.—Texarkana 1936, writ ref'd), as representative of the rule that when the deed of trust grantee (beneficiary) and trustee are the same individuals or entities, the trustee need not make demand on himself to enforce the trust and refuse that demand before he may properly appoint a substitute. We agree with this rule, but it has no application to the present case. It is true that Ralph B. Lee played several roles in this transaction. He was president and dominant shareholder of American Savings, the deed of trust grantee. He served as trustee under the deed of trust. His law firm performed services for American Savings throughout. Nevertheless, Ralph B. Lee and American Savings were, and are, separate entities. There is no basis in this case to justify a disregard of American Savings' corporate existence and thereby excuse compliance with the express terms of the deed of trust.

■ We sustain the Musick parties' points number 10 and 11. In these points the contention is made that the foreclosure sale is subject to attack because irregularities and other circumstances are combined with a grossly inadequate consideration received at the sale. We have previously noted the possible irregularities arising from the appointment of the substitute trustee. As in Cline v. Cline, *supra,* it appears that neither Mrs. Musick nor T.W.I. received notice of the foreclosure sale. Such notice is not required but may be a factor under these circumstances. American knew that the title to the tracts were in question and were further aware that Meyer Jacobson was a principal with the City Title Company whom it selected to close the transaction. The instruments contained the changes or "alterations" referred to previously herein. The bid price received was $25,000. Appraisal testimony supported a value of all three tracts on the date of the foreclosure sale at $338,365. The 618.7 acre tract was appraised on that date at $309,350. Thus, issues of fact were presented which precluded an instructed verdict. Crow v. Davis, 435 S.W.2d 176 (Tex.Civ.App.—Waco 1968, writ ref'd n. r.e.) ; Cline v. Cline, *supra*; Chandler v. Orgain, 302 S.W.2d 953 (Tex.Civ.App.— Fort Worth 1957, no writ) ; Gandy v. Cameron State Bank, 2 S.W.2d 971 (Tex.Civ. App.—Austin 1927, writ ref'd).

■ We also sustain the Musick parties' point 12. American had obtained a title policy from Elliott and Waldren Title and Guaranty Company. The title company subsequently went into receivership in Travis County. In that judicial proceeding, American filed a sworn proof of claim to the receiver reciting, "in making preliminary check, we discovered that neither Kent nor Jacobson had title to the property in question." American agreed to a reduction of its claim from the amount of the note ($150,000) to $75,000. American actually received the sum of $56,250 from the receiver of the title company in payment of a portion of the approved claim. The trial court excluded the documents and evidence establishing these facts. In this ruling, the court was in error. Under the doctrine of judicial estoppel, a party who had made a statement in the course of a judicial proceeding may not be heard afterward to maintain a contrary position in the absence of proof that the statement was made inadvertently or by mistake, fraud or duress. The Supreme Court in Custom Leasing, Inc. v. Texas Bank and Trust Company of Dallas, Tex., 516 S.W.2d 138 (1974), expressly approved the reasoning of the court of civil appeals in Texas Bank & T. Co. of Dallas v. Custom Leasing, Inc., 470 S.W.2d 123 (Tex.Civ.App.—Tyler 1971), rev'd on other grounds, 491 S.W.2d 869 (Tex.Sup.1973) with respect to the

doctrine of judicial estoppel but held that Custom's cause of action for tort was a distinct cause of action that was not inconsistent with Custom's suit against other parties for performance under alleged contracts. In the Supreme Court approved portion of the opinion, the court of civil appeals stated the rule to be as follows:

In Norris v. Wilkens, 3 S.W.2d 126 (Tex.Civ.App., Dallas, 1928, n.w.h.), the Court said:

"The doctrine seems to be well established that, where a litigant chooses between two or more different and co-existing modes of procedure allowed by law on the same state of facts, an election of a remedy results (9 R.C.L. p. 956, § 1), and when, as the result of action taken, an advantage is gained or a detriment occasioned, the litigant is estopped to pursue any other coexisting mode of procedure." (Citing cases.)

In Seamans Oil Co. v. Guy, 115 Tex. 93, 276 S.W. 424, 426 (1925), the rule is stated thusly:

" 'If one having a right to pursue one of several inconsistent remedies makes his election, institutes suit, and prosecutes it to final judgment or receives anything of value under the claim thus asserted, or if the other party has been affected adversely, such election constitutes an estoppel thereafter to pursue another and inconsistent remedy. * * *' "

In 28 C.J.S. Election of Remedies § 8, p. 1073, it is stated:

" * * * Where a party has grounds to bring separate actions against different persons, and the maintenance of one necessitates the allegation of a fact, or the assumption of a position, inconsistent with, or repugnant to, the maintenance of another, he is bound by his election, and cannot proceed against the other; in other words, where a party has suffered an actionable wrong he will not be permitted to pursue inconsistent remedies against different persons. * * *" (Texas Bank & T. Co. of Dallas v. Custom Leasing, Inc., *supra,* 470 S.W.2d at 125-126)

There is some suggestion here that the payment by the receiver may have been made to avoid expense of litigation rather than upon the basis of title failure. Although the amount approved seems too large to accommodate this theory, we do not hold that election of remedies is established on this state of the record as a matter of law. We do hold that the issue was raised and that the trial court should not have excluded the evidence in question nor instructed a verdict.

In view of our holding with respect to the 41.4305 and 16.6 acre tracts, we overrule the Musick parties' "alteration" points because such alteration, if it existed, would not be "material." Associated Sawmills, Inc. v. Peterson, 366 S.W.2d 844 (Tex. Civ.App.—Dallas 1963, no writ). Mrs. Musick conceded that she intended to include the large tract in the deed.

All other points of error by all parties have been considered and, except as above stated, are overruled.

The judgment of the trial court with respect to the 41.4305 acre and 16.6 acre tracts is affirmed.

The judgment of the trial court with respect to the 618.7 acre tract is reversed and remanded.

Affirmed in part and reversed and remanded in part.